Bass *v.* State.

(*Nashville*, December Term, 1949.)

Opinion filed June 14, 1950.

M. A. PEEBLES, of Columbia, FRANK REYNOLDS, of Nashville, and R. R. HAGGARD, of Waynesboro, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, C. D. HOPKINS and R. K. WOODY, both of Columbia, for defendant in error.

MR. SPECIAL JUSTICE ALBERT WILLIAMS delivered the opinion of the Court.

Arthur L. Bass has appealed in error from the judgment of the Circuit Court of Maury County, where he was convicted of murder in the first degree and sentenced to death.

He was a cousin of Rainer Bass, the man for whose murder he was indicted, and sometimes visited him. On Saturday, April 9, 1949, a neighbor of Rainer Bass was requested by telephone to notify him that Arthur Bass was in Columbia and wanted to meet him there. The two came to the house of Rainer Bass and spent Sunday and Monday together. On Tuesday, April 12, shortly before midday, one Burhl Russell, who had been doing some plowing for Rainer Bass, came to his home and called him. He testifies that at the second call Arthur Bass opened the door of the house and stood therein, holding one hand upon the door facing and the other upon the door. He states that at this time he heard groans from within the house and that Arthur Bass, hereinafter referred to as the defendant, told him that Rainer Bass was sick and asked that he call a doctor. He carried this message to the home of a neighbor, Miss Beatrice Langford, who placed the call as requested.

Miss Langford then went to the home of Rainer Bass and states that although she called him twice she received no response. She says, however, that she did hear someone in the house coughing as if in great distress. Upon hearing this sound she went to the back of the house, she says, and observed that the car owned by Rainer Bass was not where it was usually kept, from which fact she concluded that the sick man had gone to see the doctor and so made no further investigation at the time.

The next morning the father of Miss Langford went to the home of Rainer Bass and received no response to his calls, whereupon he climbed up and looked through the window. He saw the room in disarrangement and someone's hand, so he summoned officers. They found the room in great disorder and bloody, and the body of Rainer Bass stretched upon the floor. The handle of an iron poker was lying upon a stove and two pieces of it on the floor, one of them behind the bloodstained bed. The wash basin near the kitchen door contained bloody water.

An undertaker was called to the home of the deceased and testified that he found seven distinct wounds upon the body, including one which fractured the skull on the right side. The right ear of the deceased, this witness says, was almost torn off and he had a wound on his forehead, two others over his right eye and one at the base of his skull. Although the deceased, who appears to have engaged to some extent in the bootlegging business, customarily carried large sums of money on his person, only a few coins were found in his room and his pocketbook was missing.

About noon on the date on which Miss Langford noticed that the automobile of the deceased was not at its accustomed place, other witnesses saw the defendant driving rapidly toward Hampshire in Maury County. About a mile from Hampshire the car he was driving stopped and the defendant rode upon a wagon with one Paulie Murphy. Murphy says the defendant inquired where he could get a taxicab to go either to Hohenwald or Mt. Pleasant and that at the nearest filling station he hired a car to take him to Hohenwald. Murphy said he noticed a cut upon the defendant's left hand and that the

defendant told him he had scratched it upon a car door. Two young men who were hired to take the defendant to Hohenwald testified that he told them he had hurt his hand upon the hood of a car.

These two witnesses state that the defendant appeared extremely nervous and urged them to make more speed. One of them says that the defendant took out his pocket-book to pay his fare and that it appeared to be full of money. At Hohenwald defendant hired a taxicab to drive him to Waynesboro and told the taxicab driver that he was in a hurry. At Waynesboro he took another taxicab to Lawrenceburg; at that place he found his nephew, to whom he owed the sum of three dollars, and tendered him a hundred dollar bill. When the nephew was unable to make change for this bill, he gave the young man a twenty dollar bill, which he could change. A day or so afterwards the empty pocketbook of the deceased was found in the men's toilet room in the railroad station at Lawrenceburg. The defendant was later apprehended and arrested in the State of Ohio.

There was testimony concerning finger prints found upon the premises of the deceased, but since the defendant upon trial admitted his presence at the home of the deceased and an encounter with him, proof concerning the finger prints is no longer of much importance and may be assumed to show nothing more than the defendant himself admits.

The defendant explained his possession of the money which had belonged to the deceased by testifying that he and the deceased had played poker on Monday night until about three o'clock the next morning and that he had won a considerable amount of money from the deceased. At six o'clock in the morning, he says, he and

the deceased took a few drinks and renewed the poker game. In this game, he says, he won the sum of $162, which was all the money the deceased had, and finally bet the deceased two dollars against his pocketbook and won that.

He says that the deceased then began to accuse him of circulating a report that the deceased had threatened a brother of the deceased who had been killed, and that this accusation led to a dispute culminating in a threat by the deceased to kill the defendant, and an attack on him by the deceased with a poker. It was with this poker, he says, that the injury upon his left hand was inflicted by the deceased. He states that in the progress of the fight he struck the deceased with his fist and knocked him to a sitting position, and then took the poker away from him. Then, he says the deceased threatened to get a pistol and started to the bureau drawer where he knew the deceased kept a pistol and where a loaded pistol was later found. To prevent the deceased from securing this gun, defendant says he struck him with the poker, knocking him to a sitting position on the floor. He admits asking the witness Burhl Russell, who came to see the deceased about plowing, to go and get a doctor and says that after this witness left, the deceased was still threatening to kill him, and that because of these threats and to prevent the deceased from doing him further harm, he got in the car of the deceased and drove away.

Such was the evidence that now seems material upon appeal. The jury resolved the issues of fact against the defendant and obviously disbelieved his testimony of how his difficulty with the deceased took place. Motions for a new trial and in arrest of judgment were seasonably

made and overruled and an appeal in error properly perfected.

Twelve assignments of error are made and will be taken up in order, although in some instances they appear repetitive.

■ It is first assigned as error that the court denied a petition by the defendant to have him transferred to the Central State Hospital for observation and examination. This motion was made before the defendant was indicted, but it appears to have been passed on thereafter and so will be treated as a part of the proceedings. This court has no way of knowing what evidence was heard upon the mental or physical condition of the defendant at the time his petition was denied. No such evidence has been preserved in the bill of exceptions. The order of the court denying the petition does state that it was based upon the ''testimony of doctors and argument of the attorney,'' and recites that the defendant was found able to stand trial. Without preservation in the bill of exceptions the testimony heard upon consideration of the defendant's petition must be presumed to have justified the court's action. *Fine* v. *State,* 183 Tenn. 117, 119, 191 S. W. (2d) 173.

■ Of course the law presumes sanity and the burden is on the defendant to show insanity if such defense is relied on. *King* v. *State,* 91 Tenn. 617, 646, 20 S. W. 169. Beyond the suggestion implicit in the defendant's original motion, there is nothing anywhere else in the record to indicate insanity, present or past.

The first assignment of error is accordingly overruled.

■ The second assignment of error is based upon the court's action in overruling the defendant's motion for a continuance. Although the matter of granting a con-

tinuance is so largely one of discretion on the part of the trial judge, *Ross* v. *State,* 130 Tenn. 387, 390, 170 S. W. 1026, we have, because of the comparatively short time intervening between the indictment and the trial of the defendant in this case, sought to find any evidence in the record indicating that the defendant was prejudiced through want of time to prepare his defense. He was indicted on May 23, and his trial began on May 30. There is no showing that he could have made out a better case for himself whatever time had been allowed him. His motion for a new trial was filed July 16 and was not passed on until October 21. Even then the defendant had not shown how want of time to prepare his case had affected his defense.

The motion for a continuance filed on May 23 stated that in the opinion of the defendant and his lawyer there was not time enough to prepare a proper defense between that date and May 25, on which date the case was first set. It was stated by defendant's counsel that he might have to make a trip to Birmingham, Alabama, for the purpose of talking to a witness in behalf of the defendant. After this motion was filed and overruled, the attention of the court was called to the requirements of Chapter 189 of the Public Acts of 1949, providing that in cases where a defendant is accused of a capital offense, he shall be entitled to three full days after the return of the indictment against him before being tried therefor, whereupon the action of the court in denying the motion for a continuance was reconsidered and the motion granted in an order continuing the case until May 30. The defendant excepted then to the action of the court "in not granting the defendant a longer time to prepare for trial," but it does not appear that any further motion for

a continuance was ever made. It thus appears that the defendant's motion was granted but that he was not satisfied, at the time the motion was granted, with the extent of the relief he obtained under the court's order.

It does not affirmatively appear, however, that the defendant was prejudiced by the short time intervening between his indictment and trial. No evidence was introduced upon his motion for a new trial indicating how he suffered from the action of the court in failing to give him more time for the preparation of his defense. The second assignment of error must be overruled.

The third assignment of error is that there was no evidence to support the verdict of the jury. Of course to support a verdict finding a defendant guilty of murder in the first degree there must be evidentiary basis for a conclusion that the killing was wilful, malicious, premeditated and deliberate, unless effected by poison or lying in wait or in the perpetration of or attempt to perpetrate one of the felonies named in the defining statute, in which cases the specified circumstances make it unnecessary otherwise to prove deliberation and premeditation. *Floyd* v. *State,* 50 Tenn. 342.

It is earnestly argued in a supplemental brief filed in behalf of the defendant that the record does not contain proof that the defendant killed the deceased in the perpetration of or attempt to perpetrate any other felony because the only testimony as to how he came to be possessed of the property of the deceased is his own, which testimony is to the effect that he won the deceased's money before he struck him and that he did not take the car of the deceased for the purpose of permanently depriving the owner thereof but only for a temporary and

necessary use in removing himself from the presence of the deceased. Therefore, it is said, since there is no proof that the killing occurred by means of poison or lying in wait, or in the perpetration of or the attempt to perpetrate any of the felonies enumerated in the statute defining murder in the first degree, it was necesary for the State to prove deliberation and premeditation in order to warrant a verdict of murder in the first degree.

We cannot say that the existence of either premeditation or deliberation was not supported by some evidence in the present case. Both premeditation and deliberation may be inferred from the circumstances of a homicide. While wilful killing with a deadly weapon is not a sufficient basis for an inference of premeditation and deliberation, it is seldom that the evidence in a case of homicide is restricted to no more than these bare facts and it is commonly the case that the jurors have before them other circumstances from which they may infer the existence or the want of the mental elements of premeditation and deliberation.

In the present case the deceased was not only struck and killed by a blow from an iron poker but apparently from the number and nature of his wounds, was beaten to death by a whole series of blows. The poker was broken in three pieces and one of them was found behind the bloodstained bed, a fact that the jury may have considered significant in supporting the theory that the deceased was not killed under the circumstances stated by the defendant, but was struck while lying upon his bed.

But there was no compulsion on the part of the jury to believe the testimony of the defendant upon the question of how he came into possession of the money of

deceased. The determination of a fact is arrived at from all the testimony and surrounding circumstances and no rule of evidence requires the jury arbitrarily to accept the testimony of an interested witness, whether or not he be directly impeached, when from a consideration of all the evidence a different conclusion is reached from that supported by the testimony of such witness. *Carter* v. *Kelsey Wheel Co.*, 168 Tenn. 262, 264, 77 S. W. (2d) 449.

If the jury had believed the facts to be as stated by the defendant, the homicide could not have been considered felonious at all, but his testimony was rejected. There was no evidence of how the defendant came into possession of the property of the deceased except his own testimony. Aside from his statement there was evidence which warranted a conclusion that the deceased had been killed in the progress of robbery. It was not necessary that anyone should have seen the defendant actually take the money from the deceased. The circumstances of flight and falsehood, when connected with the possession of money that had lately been in the pocketbook of a murdered man would support the inference of robbery.

Upon this premise the verdict would be sustained even though other proof of premeditation and deliberation were absent. The third assignment of error is accordingly overruled.

Assignment of error number four raises. again the question of whether or not counsel for the defendant was allowed time enough to prepare a defense or properly investigate the case. This time, however, the language of the assignment is directed against the failure of the trial judge to grant a new trial on an affidavit filed by

counsel setting forth certain circumstances which he considered interfered with a fair trial of his client, rather than upon an alleged error in failing to grant a continuance. The affidavit filed by counsel for the defendant in support of this ground of his motion for a new trial states (1) that the lawyer is a nonresident of Maury County and received little or no cooperation in his investigation and went to trial without having had any witness placed under subpœna; (2) that only on the first day of the trial was the defendant able to secure enough money to employ local counsel; (3) that the owner of the property where the killing occurred refused to allow counsel to go on the property; and (4) that the defendant and his counsel were not permitted to see certain pictures introduced by the State until they were presented at the trial of the cause.

Although this affidavit states that the defendant was prejudiced by these things, there is no evidence of such prejudice except the expressed opinion of his lawyer. The fact that the defendant went to trial without having placed any witness under subpœna could have resulted either from the fact that he had found no witnesses whose testimony would help him or from negligence. There is no showing that he has since found any witness whose testimony would seem to have been important enough to warrant an inference that it could have changed the course of the trial. Failure to possess means to employ counsel is most unfortunate but provision is made by law for the indigent and unrepresented when they appear as defendants in a criminal case. After all, the defendant did have the lawyer of his choice and it is not shown that he requested the court to appoint counsel for him.

Certainly there was no obligation on the part of the owner of the property where the homicide occurred to allow anyone to go upon his premises for purposes of investigation without a court order, nor does it appear how his refusal prejudiced the case of the defendant. Neither did the defendant nor his counsel have any right to demand of the State before the trial the pictures which were offered in evidence.

Accordingly assignment of error number four is overruled.

The fifth assignment of error complains that the verdict was contrary to the evidence, that the evidence was not sufficient to show the defendant guilty beyond a reasonable doubt, and that the verdict was contrary to the charge of the court. It is not said how the verdict is contrary to instruction so it is assumed that this assignment is directed to the weight of the evidence. Therefore what has heretofore been said about the evidence is pertinent at this point. The jurors were not compelled to accept the testimony of the defendant. It cannot be said that his statement outweighed and preponderated against the proof of circumstances which indicated his guilt.

Accordingly the fifth assignment of error is overruled.

The sixth assignment of error complains of the action of the court in "making the defendant testify against himself in violation of his will." The record does not warrant a statement that the court compelled the defendant to testify. He took the stand of his own accord. What counsel construes as compulsion to testify was a requirement of the court, after the defendant had already testified, that he stand up in order that witnesses might see him. Courts have held that even though the

274

defendant has not testified, his rights are not violated by being required to stand where witnesses may identify him. *People* v. *Goldenson,* 76 Cal. 328, 19 P. 161; *People* v. *Curran,* 286 Ill. 302, 121 N. E. 637; *People* v. *Gardner,* 144 N. Y. 119, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741. Other courts have held to the contrary. *Smith* v. *State,* 247 Ala. 354, 24 So. (2d) 546.

 When the defendant takes the witness stand, however, it would seem that all question concerning his right to protect himself against compulsory inculpation in connection with the crime under investigation is waived. *Clapp* v. *State,* 94 Tenn. 186, 201, 30 S. W. 214. The sixth assignment of error is accordingly overruled.

The seventh assignment of error complains that witnesses were permitted to testify to material facts although they had been in the courtroom while the trial was in progress. The assignment does not comply with the rule of this court concerning those based upon the admission of testimony, for the particular parts of the testimony which are the subjects of objection are not pointed out. Rule 14, Supreme Court Rules. Nevertheless we have carefully reviewed all the testimony of the witnesses who were said to have been in the courtroom prior to their appearance upon the witness stand, and none of their testimony appears to be of such a nature that it might not properly have been introduced in rebuttal. The defendant had testified that he struck the deceased in his necessary self-defense, and testimony concerning the deceased's size and character therefore became pertinent. The testimony objected to was on this subject and was introduced after the defendant had closed his case.

 Even if it should not be regarded as rebuttal, it was of such a nature that we could not say the rights of the defendant were prejudiced by the fact that these witnesses had been in the courtroom. The trial judge did not think so and has large discretion in determining such matters. *Pennington* v. *State,* 136 Tenn. 533-539, 190 S. W. 546. The seventh assignment of error is accordingly overruled.

The eighth assignment of error is directed against the admission of photographs, taken twenty hours after the defendant had left the scene. There is no insistence that these pictures did not represent the scene as it was first found by witnesses after the killing and the lapse of twenty hours is not so great as to destroy the probative value of a representation of the conditions found at that subsequent time. It is said in the assignment that these pictures were made exhibits ''for the purpose of inflaming the minds of the jury and prejudicing the rights of the defendant.'' The statement, however, is not borne out by anything in the record to which we are referred.

In a case reviewed by this court it was held that evidence consisting of a part of a murdered man's body, exhibited to the jury for a proper purpose, was not open to the objection that is here made against the introduction of pictures, that is that it was calculated to inflame and prejudice the minds of the jury. *Turner* v. *State,* 89 Tenn. 547, 564-565, 15 S. W. 838.

 If the pictures accurately showed the environment as it existed at a time near enough to the homicide to warrant an inference that such condition had existed then, they should not, if material, be excluded from evidence upon the possibility that they might un-

276

duly excite the emotions of the jury. *Hughes* v. *State,* 126 Tenn. 40, 69, 148 S. W. 543, Ann. Cas. 1913D, 1262. Accordingly the eighth assignment of error is overruled.

The ninth assignment of error is based upon an allegation that during the progress of the trial one juryman "talked to the judge in an undertone and none of the jurymen nor counsel who were present could hear." We are not referred to any place in the record which indicates that this occurred, nor are we able to find any. It is not enough that a motion for a new trial alleges a fact. This court must consider the facts of the trial vouched for by the trial judge and included in the bill of exceptions. All we find about the alleged fact referred to in this case is a statement of counsel. *Tennessee Cent. Ry. Co.* v. *Vanhoy,* 143 Tenn. 312, 334, 226 S. W. 225.

Accordingly the ninth assignment of error is overruled.

By the tenth assignment of error it is insisted that there was another reasonable hypothesis upon which the jury might have found the defendant not guilty of murder in the first degree. This is something that addressed itself peculiarly to the triers of fact and the trial judge who approved their verdict. The jury and the trial judge were satisfied beyond reasonable doubt that the defendant was guilty of murder in the first degree, and the possibility that they might have decided otherwise upon some other hypothesis is not ground for reversal here. "In this court the defendant is presumed to be guilty and must establish his innocence by a preponderance of the testimony." *Hill* v. *State,* 159 Tenn. 297, 17 S. W. (2d) 913, 915.

The tenth assignment of error is accordingly overruled.

The eleventh assignment of error is directed at the refusal of the trial judge to suspend the trial temporarily because the defendant was ill and had taken a sedative. The record shows that after this application for a suspension of proceedings the County Health Officer examined the defendant, who was complaining of a headache, and prescribed some medicine intended to relieve him. This doctor said the defendant had no temperature and was apparently normal and able to proceed with the trial. The following questions and answers, taken from the cross examination of the defendant, convince us that the trial judge did not abuse his discretion:

"Q. Mr. Bass, does your mind seem to be clear today? A. Oh, yes; oh, yes. I have just got a splitting headache is all.

"Q: That is the only complaint you have now to make, a headache? A. Yes, sir.

"Q. But your memory is all right, isn't it? A. As far as I know, it is."

Since there is nothing in the record to indicate that the defendant made or failed to make any statement which he would not have made had his headache been absent, nor anything to indicate that he failed clearly to understand all matters he was asked about, the eleventh assignment of error is overruled.

The twelfth assignment of error is based upon the court's action in failing to grant a new trial because of newly discovered evidence. No newly discovered evidence, however, appears in the record. All that appears concerning such newly discovered evidence is the statement of Mr. Frank P. Reynolds, defendant's

attorney, that after the trial someone told him that the witness Beatrice Langford had made statements to the effect that when she went to the house of the deceased "the door was open and that she saw inside the stove and pan of ashes and that she left the house with the door still open." Beatrice Langford was not introduced to testify in support of the motion for a new trial nor was any one introduced who had heard her make such statement. The affidavit concerning the newly discovered evidence was pure hearsay and therefore incompetent for the purpose of establishing a fact.

The twelfth assignment of error is accordingly overruled.

Because of the serious nature of the case we have dealt with the foregoing assignments seriatim but it must be apparent that the only one raising any reasonably debatable question is that which deals with the sufficiency of the evidence to justify a verdict of murder in the first degree.

While we cannot say that there was not sufficient evidence to warrant the conclusion of the jury that the defendant killed the deceased with premeditation and deliberation, or else in the perpetration of robbery, yet because of the fact that a curtain of uncertainty hides what had been going on between the deceased and the defendant during the nights and days that they had been drinking in the company of each other before the day of the killing, the question of whether defendant's mind was sufficiently clear to be capable of that deliberation of thought which is necessary to become a basis of murder in the first degree, naturally intrudes itself. Yet there is no evidence, save in the testimony of the defendant himself, that such deliberative thought did not

exist, and the defendant himself does not say that his mind was clouded by intoxication or loss of sleep. We are unable, therefore, within the ambit of the law, to hold the trial court in error in failing to sustain the defendant's motion for a new trial.

 The court cannot exercise the prerogative of pardon. This belongs to the Governor alone. *State* v. *Dalton,* 109 Tenn. 544, 547, 72 S. W. 456. We are willing, however, to state that in the opinion of the individuals who compose this court, the question concerning the defendant's deliberation well warrants the indulgence of executive clemency to the extent that the death sentence be commuted to one of life imprisonment. Such a course is recommended. The judgment of the trial court is affirmed.

TOMLINSON, J., not participating.