WILLIAM RILEY BROWN and JAMES LEWIS AULT, Plaintiffs in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Oct. 22, 1969.

Certiorari Denied by Supreme Court Jan. 19, 1970.

Lee Asbury and Roy Asbury, Jacksboro, Ottis B. Meredith, Clinton, for plaintiffs in error.

George F. McCanless, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Hunstsville, Con E. Troutman, Asst. Dist. Atty. Gen., LaFollette, J. Frank Qualls, Harriman, Special Counsel, for defendant in error.

## OPINION

HYDER, Judge.

Plaintiffs in error were convicted of voluntary manslaughter; James Lewis Ault was sentenced to the penitentiary from two to ten years, and William Riley Brown was sentenced to the penitentiary from two to four years. They are represented by retained counsel and they have appealed their judgments and sentences to this Court.

The Grand Jury of Anderson County indicted the defendants Ault and Brown on September 25, 1967, charging them with murder in the first degree of Jesse Byrge, Jr. Their trial in the Criminal Court in October, 1967, resulted in convictions. The jury found Ault guilty of murder in the second degree, fixing his punish-

ment at eighteen years; and found Brown guilty of voluntary manslaughter and fixed his punishment at eight years. Motion for new trial was sustained by the trial judge upon a showing that the alternate juror had entered the jury room during the jury deliberations at the conclusion of the case; and the judgments were set aside.

On January 23, 1968, defendants filed a Motion asking the trial court to postpone the setting of a trial date in this cause until such time as they have been furnished with a transcript of the evidence and proceedings of the first trial. It was stated in this motion that the testimony of the witnesses at the former trial is essential to their preparation for a re-trial of the case. Defendants say in the motion:

"That they are aware of the Court Reporter's work load and do not insist upon immediate delivery of said transcript but do insist upon a postponement of the trial of this cause until a reasonable time after the furnishing of said transcript."

On January 24, 1968, an order was entered overruling the motion, and the defendants saved their exceptions.

The case now before us was then tried in the Criminal Court of Anderson County on May 28, 29 and 30, 1968, resulting in the convictions of both of the defendants of voluntary manslaughter. No motion was made by the defendants at the May, 1968, term of court for a continuance for any reason or purpose, nor was any reference made at that term of the motion made and overruled at the January, 1968 term.

Defendants' first two assignments of error contend that the trial judge erred in failing to sustain the motion

for continuance of this trial upon the ground of failure of the State Court Reporter to furnish a copy of the transcript of the former trial; and that the trial court erred in failing to furnish them with a transcript of their former trial as required by TCA ¶ 40-2037.

The motion made for a continuance until furnished a transcript of the former trial was made and overruled four months prior to the date the instant case was actually tried.

Defendants do not cite any authority to support their theory that they are entitled to a copy of the transcript of the former trial except the provision of the Tennessee Code Section. In their brief they say that the failure of the official court reporter to furnish them a copy of the transcript, which they agreed to pay for, resulted in great prejudice to them since they needed it to prepare their defense, and that this failure entitles them to a new trial.

In reply to these two assignments the State says that the trial judge did not abuse his discretion in denying the motion, that the defendants made no motion on the trial date in May, and that Section 40-2037 of the Code does not apply to, nor was it intended to apply to, transcripts of proceedings other than that on which the defendant is basing his appeal. In support of this position, the State cites an unreported opinion of the Supreme Court of Tennessee: Harry Brown v. State, Hamilton Criminal, released March 22, 1968.

Harry Brown, an indigent with appointed counsel, assigned as error the refusal of the trial court to provide him with the transcript of the previous trial upon the

same charge that he was later convicted of, and said that the transcript was necessary in order to obtain a fair trial. He said that the denial of the transcript deprived him of due process and equal protection of the laws as guaranteed by the United States Constitution. In their opinion affirming the judgment of the trial court our Supreme Court said:

"There are no allegations as to any discrimination or prejudice resulting to defendant by failure to have the transcript of the previous trial. It is abundantly clear that no violation of the defendant's constitutional rights of equal protection or due process resulted from the trial court's refusal to provide a transcript of the previous trial under a prior indictment."

The matter of granting a continuance is largely one of discretion on the part of the trial judge; and he will not be put in error for denying a continuance unless it be shown that he has abused his discretion in doing so. Bass v. State, 191 Tenn. 259, 231 S.W.2d 707; Moorehead v. State, 219 Tenn. 271, 409 S.W.2d 357.

The motion made by defendants on January 23, 1968, was that the Court postpone the setting of a trial date in this cause until such time as defendants have been furnished with a transcript of the former trial. This motion was overruled on January 24, 1968, as we have stated, and no further motion was made on the subject. The case was not tried for four months. No petition nor motion was made to the trial court for an order directing that the court reporter prepare a transcript of the former trial.

We do not believe that the trial judge abused his discretion in overruling the motion. Nothing was developed

in the trial which shows that the defendants might have been prejudiced in any way by the refusal to grant the motion, and we do not feel that they were so prejudiced. We do not feel that the ruling of the court violated any Constitutional or legal rights given to the defendants. We overrule the first two assignments of error.

In their third, fourth and fifth assignments of error the defendants claim that the evidence preponderates in favor of their innocence and against their guilt. The defendant Ault contends that he was not responsible for the death of Byrge; and the defendant Brown contends that he was a peace-maker, that he was a non-participant in the altercations, and that struggling with Byrge the gun discharged without any intentional act on his part.

The proof established that on August 19, 1967, Jesse Byrge, Frank Lowe and C. P. Phillips were together. They rode around in the Phillips car and drank quite heavily, of beer, gin, and white whiskey. Byrge became highly intoxicated. They had car trouble on Frost Bottom Road and had to push the Phillips car once or twice to get it started. The last time, when Byrge and Lowe were pushing the car to start it, C. P. Phillips drove off and left them stranded about four miles from their homes. Byrge and Lowe continued towards home on foot and were met by the car of James Lewis Ault, who had as his passengers: William Riley Brown; Mrs. Irene Ault, the former wife of James Lewis Ault; and five children of the Ault marriage, all of them being mentally retarded in varying degrees.

Mrs. Linda Duncan and her granddaughter, Abigail Phillips, were walking along the road in view of the scene of this meeting, and they testified for the prosecution.

It was their testimony, and that of Frank Lowe, that as the Ault car passed by something was yelled by Byrge about taking him home, or taking them for a ride. Ault stopped the car some distance beyond Byrge and Lowe, and the prosecution witnesses said that Ault got out with a brown paper bag, and that he took a pistol out of it. They said that Ault struck Byrge on the head with the pistol, that the pistol flew out of his hand, and that Ault told Brown to get the gun and "shoot him, the son-of-a-bitch." Brown picked up the pistol, Lowe said, and shot Byrge. Frank Lowe said that he tried to get the defendants to help Byrge, or to go and get an ambulance, but that they refused and left the scene in the car. Byrge tried to walk towards his home, and was helped along by Lowe, but after a short distance he collapsed and died.

The defendants testified that after they stopped and got out of the car to see what Lowe and Byrge wanted, that Byrge got a large rock and said that if they did not take him to overtake C. P. Phillips, who had run off and left him, that he was going to break out all the windows in the car. Ault said that he then returned to his car and got the paper bag from under the front seat, and that he removed the pistol from it and approached Byrge. He said that Brown was able to quiet Byrge and stop him from cussing, and as he started back towards his car that Byrge swung at him with a knife and he hit Byrge in the head with the gun. Ault testified that he then threw the gun down, to keep from having more serious trouble, that Byrge tried to get the gun, and that Brown picked it up. In the scuffle between Brown and Byrge, according to the testimony of the defendants, the gun discharged accidentally, and Byrge was shot.

Defendants say, in their brief, that Ault struck Byrge in self defense; that Brown tried to make peace between them, and that Byrge was shot accidentally when he scuffled for possession of the pistol.

 It is well established by numerous decisions of the Supreme Court of Tennessee, and of this Court, that a verdict, approved by the trial judge, accredits the testimony of the State's witnesses, resolves all conflicts in the testimony in favor of the State, and establishes the State's theory of the case. Under such a verdict the presumption of innocence disappears, and upon appeal, that presumption of innocence is replaced by a presumption of guilt. This Court is not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the accused. We may review the evidence only to determine whether it preponderates against the verdict, and the defendant on appeal has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Brown v. State, Tenn. Crim.App., 441 S.W.2d 485.

The proof in this case is conflicting, as is true in many jury trials. The testimony of the prosecution witnesses support the theory of the State that William Riley Brown and James Lewis Ault, the defendants, without adequate provocation, had an altercation with Jesse Byrge, Jr.; that Ault assaulted Byrge with a loaded pistol and hit him so hard that it flew out of his hand; and that he

ordered or directed Brown to get the pistol and shoot Byrge, which he did.

The defendants have not shown that the evidence clearly preponderates against the verdict and in favor of their innocence.

Finding no error in this record we affirm the judgment of the trial court.

WALKER, P. J., and MITCHELL, J., concur.