# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 13, 2011 Session

## STATE OF TENNESSEE v. JONI MICHELLE OSBORNE

**Appeal from the Circuit Court for Williamson County**
**No. IICR014650      Timothy Easter, Judge**

---

**No. M2010-00173-CCA-R3-CD - Filed November 28, 2011**

---

A Williamson County Circuit Court jury convicted the defendant, Joni Michelle Osborne, of simple possession of a controlled substance (methamphetamine), *see* T.C.A. § 39-17-418(a) (2006), and violation of the seatbelt law, *see id.* § 55-9-603. Following the jury's verdict, the trial court found the defendant guilty of felonious simple possession based upon her prior history of drug convictions, *see id.* § 39-17-418(e), and imposed an effective sentence of two years consisting of 30 days' incarceration in jail and the service of the remaining portion of her sentence on probation. On appeal, the defendant argues that the trial court erred by denying her motion to suppress the fruits of the search of her vehicle, denying her motion to continue the trial, and referring to an exhibit as "illegal drugs" in its instructions to the jury, and that the cumulative effect of these errors deprived her of a fair trial. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Casey A. Long, Franklin, Tennessee, for the appellant, Joni Michelle Osborne.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Kim R. Helper, District Attorney General; and Christopher K. Vernon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At approximately 11:30 p.m. on August 29, 2009, Franklin Police Department (FPD) Officers Mark Dean and Carlos Martin noticed the defendant who was traveling westbound on Highway 96 near 11th Avenue in Franklin. The officers traveled behind the

defendant for approximately one-half mile. Through the illumination of street lights and oncoming traffic, they determined that the defendant did not have her seatbelt engaged. They both explained that they could see the silver seatbelt buckle resting on the "b-pillar" of the defendant's 1988 Pontiac Bonneville. The officers initiated a traffic stop based upon their suspicion that the defendant was driving without her seatbelt engaged.

Upon approaching the defendant's vehicle, both officers noticed that the defendant was "shaking" and "very nervous." Officer Martin asked the defendant if she had anything illegal in the car, and the defendant informed him that the ash tray contained a partially smoked marijuana cigarette. The officers then asked the defendant to step out of the vehicle so that they could conduct a search of the vehicle. A search of the defendant's purse revealed a "package [containing] a white powdery substance." When Officer Dean remarked that the substance looked like "coke," the defendant said, "No, it's meth." The defendant received a citation for simple possession of methamphetamine and failure to wear a seatbelt. The officers did not issue a citation for simple possession of marijuana because the amount recovered from the partially smoked cigarette was so "minuscule" that field-testing would have destroyed it entirely. Forensic testing by Tennessee Bureau of Investigation Special Agent Brent Trotter later confirmed that the "white powdery substance" was .2 grams of methamphetamine – "about the amount in a sugar packet."

At trial, the defendant testified that FPD officers had stopped her on 25 to 30 separate occasions and that she felt harassed because her brother, Jeff, was "in trouble a lot."[1] She claimed that she removed her seatbelt to retrieve her driver's license from her purse and that the methamphetamine found in her purse belonged to a friend. She did not argue with the officers regarding the use of her seatbelt, but she said that she felt abused by the FPD's repeatedly stopping her vehicle.

Based upon this evidence, the jury convicted the defendant of simple possession and violation of the seatbelt law. In a separate hearing, the trial court found that the defendant was previously convicted of two or more simple possession offenses, elevating the simple possession conviction in this case from a Class A misdemeanor to a Class E felony. The trial court then imposed concurrent sentences of two years and 30 days for the felonious simple possession and violation of the seatbelt law convictions, respectively. The court ordered the defendant to serve 30 days in the local jail and the remaining portion of her sentence on probation.

---

[1] The record reflects that the defendant's brother was well-known to the FPD and had a history of convictions including murder, drug offenses, and burglaries. The trial court noted that the defendant herself was a recent victim of her brother in an attempted first degree murder case pending in another division of criminal court.

*Motion to Suppress*

The defendant contends that the trial court erred by denying her motion to suppress the fruits of the search of her vehicle. She claims that the officers lacked reasonable suspicion to stop her vehicle and cites to this court's opinion in *State v. Jonathan Fredrick Walker*, No. W2008-00757-CCA-R3-CD (Tenn. Crim. App., Jackson, Sept. 21, 2009). The State argues that the trial court properly denied the motion to suppress.

At the evidentiary hearing on the motion to suppress, Officers Dean and Martin testified that they initiated the traffic stop after observing the defendant's vehicle for approximately one-half mile. They both testified that their observations occurred amidst the well-lit condition of streetlights and oncoming traffic. Officer Dean testified that he could "clearly see that [the defendant's seatbelt] was not going across her shoulder." Officer Martin testified that he could "see the seatbelt straight up and down, and the buckle [was] shining." Both testified that their ability to view inside the defendant's vehicle was not impaired by their vantage point, lighting conditions, or any tinting on the defendant's windows. Officer Martin said, "I could see directly . . . into her vehicle." Officer Dean recalled seeing "a silhouette inside of the vehicle [revealing] the shadow of the seatbelt." Both officers also testified that the defendant's nervous behavior prompted them to inquire whether the vehicle contained "anything illegal," leading to the defendant's admission, eventual search, and the ultimate discovery of the methamphetamine.

The trial court denied the motion to suppress. In distinguishing the case from *Jonathan Fredrick Walker*, the court noted "the main difference between this case and the . . . *Walker* case [is that] the trial judge [in *Walker*] indicated that it did not believe the officer's testimony. In this case, I find no reason not to credit these officers' testimony [sic], and I find that they had a reasonable suspicion of criminal activity."

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, we are guided by the standard of review set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. When the trial court does not set forth its findings of fact upon the record of the proceedings, however, the appellate court must decide where the preponderance of the evidence lies. *Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). We review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See,*

*e.g.*, *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), the State in the present situation carried the burden of demonstrating the applicability of an exception to the warrant requirement, s*ee*, *e.g.*, *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (temporary detention of an individual during a traffic stop constitutes seizure that implicates the protection of both the state and federal constitutions); *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998). The authority of a police officer to stop a citizen's vehicle is circumscribed by constitutional constraints. Police officers are constitutionally permitted to conduct a brief investigatory stop supported by specific and articulable facts leading to reasonable suspicion that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-23 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2002). Whether reasonable suspicion existed in a particular case is a fact-intensive, but objective analysis. *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). The likelihood of criminal activity that is required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A court must consider the totality of the circumstances in evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). The totality of the circumstances embraces considerations of the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993). The objective facts on which an officer relies may include his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992).

Officers Dean and Martin observed the defendant driving without her seatbelt engaged. This observation provided reasonable suspicion to stop the vehicle, and the officers were then in a position to conduct a brief investigation. Both the trial court and the State correctly noted the distinction between this case and this court's opinion in *Jonathan Fredrick Walker*. Similarly to the facts in this case, the officer in *Jonathan Fredrick Walker* testified that he observed the defendant's driving at night and determined that the defendant was not wearing his seatbelt as a basis to conduct a brief investigatory stop. In *Jonathan Fredrick Walker*, however, the trial court found that the officer's testimony lacked credibility relative to his ability to determine whether Walker's seatbelt was engaged and granted the defendant's motion to suppress. *Jonathan Fredrick Walker*, slip op. at 2. On appeal, this court concluded that there was "no basis for disturbing the trial court's credibility

-4-

determinations" and affirmed the trial court's suppression of the evidence. *Id.*, slip op. at 4. In the present case, the trial court accredited the testimony of the officers, and the evidence does not preponderate against the trial court's findings. Accordingly, we affirm the trial court's denial of the motion to suppress.

*Motion for Continuance*

Next, the defendant contends that the trial court erred by denying her motion for continuance. The record reflects that the trial court held the evidentiary hearing on the defendant's motion to suppress on June 1, 2009, at the defendant's request but only 17 days prior to the June 18, 2009 trial date. Sometime after 2:00 p.m. on June 17, 2009, the defendant filed a motion to continue the trial date based upon her inability to obtain a transcript of the June 1 evidentiary hearing for use at trial. On the morning of trial, the trial court denied the motion for continuance.

On appeal, the defendant makes the general claim that the "denial of a continuance prejudiced the [d]efendant in that the [d]efendant was unable to use the recorded testimony in regards to the Motion to Suppress in order to properly impeach Officer Mark Dean and Officer Carlos Martin in regards to their conflicting testimony." The State contends that the record reflects that the defendant thoroughly cross-examined the officers regarding their testimony and that the defendant has failed to establish prejudice or harm stemming from the denial of the motion for continuance.

"[T]he granting or denying of a continuance is a matter which addresses itself to the sound discretion of the trial judge." *Moorehead v. State*, 409 S.W.2d 357, 358 (Tenn. 1966) (citing *Bass v. State*, 231 S.W.2d 707 (Tenn. 1950)). An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied the defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted. *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995) (citing *State v. Wooden*, 658 S.W.2d 553, 558 (Tenn. Crim. App. 1983)). "The burden rests upon the party seeking the continuance to show how the court's action was prejudicial. The only test is whether the defendant has been deprived of his rights and an injustice done." *State v. Goodman*, 643 S.W.2d 375, 378 (Tenn. Crim. App. 1982) (citing *Baxter v. State*, 503 S.W.2d 226, 228 (Tenn. Crim. App. 1973)).

We initially note that the defendant failed to cite any authority in support of her argument and, for that reason, we could treat this issue as waived. *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by the argument, citation to authorities, or appropriate references to the record will be treated as waived."). That being said, the defendant offers nothing to support her conclusion that the denial of a continuance prejudiced

her ability to impeach the officers' testimony at trial. The record reflects that the defendant thoroughly cross-examined the officers regarding their testimony at the suppression hearing. The defendant pointed to no portion of the suppression hearing transcript that would have served as additional cross-examination ammunition. The defendant did not suffer prejudice as a result of the trial court's denial of a continuance, and the trial court did not err.

*Trial Court Reference to "Illegal Drugs"*

In her final claim, the defendant argues that the trial court improperly commented on the evidence by referring to an exhibit as "illegal drugs" in its instructions to the jury. The State contends that the defendant failed to object contemporaneously to the trial court's comment and that the issue is, therefore, waived.

At the close of its instructions to the jury, the trial court delivered additional direction concerning the handling of exhibits during deliberations and commented, "It's my policy not to let illegal drugs leave the courtroom." The State correctly notes that the defendant failed to object contemporaneously to this remark; therefore, the issue is waived. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *see State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection). Furthermore, we determine that this rather innocuous comment did not inure any prejudice to the defendant.

*Conclusion*

The defendant argues that the cumulative effect of each of her allegations of error resulted in the denial of her right to a fair trial. Having determined that none of the defendant's issues merit relief, we conclude that the defendant did not suffer any denial of her right to a fair trial. We affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE