Hoard and Kite *v.* The State.

ALFRED, HOARD, AMBROSE HOARD and ROBERT KITE
*v.* THE STATE.

1. EVIDENCE. Where witnesses, to establish an *alibi,* prove that defend-
ants stayed at the house of K. on the night of the murder, and that
K. was at home that night, and in the jurisdiction of the court at the
trial, it is competent for the defendant to show that the mental con-
dition of K. was such that he could not be introduced as a witness.

2. SAME. *Same.* The State having introduced witnesses to sustain the
general character of certain State witnesses, the defendant may in-
troduce counter-vailing witnesses as to the general character of said
State witnesses.

3. SAME. *Judge may state evidence. Practice.* While it may not be re-
versible error for the court, upon controversy between counsel in
argument, to state that a witness did not make a certain statement,
yet in view of the possibility of the judge, during a long and tedious
trial, failing to hear or remember all the testimony, it is the better
practice to have the witness recalled.

4. SAME. *Juror. New trial.* Where a motion for a new trial based upon
the affidavit of two reputable witnesses, that a juror had formed and
had expressed an opinion as to the guilt of the defendants before his
selection as a juror, it is made to appear to the court that the juror,
upon a former trial, heard the evidence of a most important witness,
and admitted that he had a conversation with affiants at the time
and place stated by them, and " thinks it probable he did say that if
the proof was sufficient to hang them, they ought to be hung, or if
the proof showed them guilty, a juror ought to have gizzard enough
to convict, or something to that effect," the court should grant a new
trial, although the juror may state further that he had not formed
or expressed any opinion when selected as a juror.

FROM GREENE.

Appeal in error from the Circuit Court of Greene
county. NEWTON HACKER, J.

A. S. DEADERICK, W. S. DICKSON, S. G. SHIELDS

and G. W. PICKLE for Alfred and Ambrose Hoard and Robert Kite.

ATTORNEY-GENERAL LEA, J. H. ROBINSON and H. H. INGERSOLL for the State.

COOKE, J., delivered the opinion of the court.

Mrs. R. C. Hunter, on the night of the 14th of February, 1884, at about the hour of nine o'clock, while sitting at home with her husband and family, was shot through a window and killed by some person upon the outside. The prisoners were indicted for the offense, and jointly tried and convicted of murder in the first degree, and sentence of death pronounced upon them. A motion for a new trial having been overruled, they have appealed to this court.

Various errors have been assigned and relied upon for a reversal. It appeared in evidence that the assassins were not seen, but upon examination, the tracks of two persons were discovered near the window, through which the deceased was shot, and were followed a distance of some two hundred and fifty yards, perhaps, to a creek, where they disappeared, and the theory of the State was, that a boat had been held at that place by defendant, Kite, until the Hoards, who it was claimed, made the tracks and did the killing, after which they crossed the creek or escaped in the boat. Upon the trial, a witness named John Harris, among other things, testified that he heard defendant, Kite, say at Payne's depot, that it was talked about through the country that he held the

boat while the Hoard boys did the shooting, but that he said this was not true. Counsel for the State then asked the witness if he had not heard others say that defendant, Kite, held the boat while the others did the shooting? The defendants objected to the question, but the court overruled the objection and the witness answered, that "he had heard lots of people talk about Bob Kite having held the boat."

This is assigned as error. It is frankly conceded, by counsel for the State, that the question was illegal, and the overruling the objection to it by the court was erroneous; but it is said that, although erroneous, it was only proving or repeating what the witness had testified, that the defendant, Kite, himself had said, and consequently could not affect the defendants injuriously, or at most, could only tend to the injury of defendant, Kite. It is also insisted, that the answer of the witness, that he had heard lots of people *talk about* Bob Kite having held the boat, as it is not stated what they said about it, could not injure the prisoner, for the reason that no conclusion could be legitimately drawn as to what these people did say. We think, however, that whether critical accuracy of construction would justify this assumption or not, a jury would, most likely, refer the answer to the question and give it as broad and comprehensive a signification as the question itself would indicate, which was that he had heard people say that Bob Kite held the boat while the Hoard boys did the shooting. The State had the right, if it saw proper, to prove the statements of defendant, Kite, as against himself,

which it did, and that statement carried with it his denial of the truth of this neighborhood talk, but by the question and answer under consideration, the State, in effect, got these hearsay statements before the jury, as to all of the defendants, stripped of defendant Kite's denial of their truth.

The testimony was clearly illegal, and in a case involving the lives of the prisoners, we cannot undertake to say they were not affected injuriously by it, and hold it was error to admit it.

The next error relied upon is as to the defendant, Alfred Hoard. He introduced as witnesses, Lucy Kite and Annie Kite, the wife and daughter of one Peter Kite, to prove an *alibi* for him, and if they were to be believed, did prove very clearly by them that he was at the house of Peter Kite at the time the deceased was killed. They both further testified that said Peter Kite was also at home on the night of the killing, and that he was then in Greeneville, the town where the trial was being had. The defendant then offered to prove, by way of explanation of the reason why Peter Kite was not also introduced as a witness by him, that said Kite had been shot or received an injury in the head during the war, as the record states, for the purpose of showing his mental condition. This was objected to by the State, and the objection sustained by the court. It is insisted for the State, that if it was the purpose of the defendant to prove that said Peter Kite's mental faculties were so impaired, by an injury of the head, as to deprive him of mind and memory sufficient to enable

him to recollect and detail facts as they occurred, it was too indefinitely stated to put the court in error on account of his refusal to admit it; and also, that the testimony was immaterial, and for that reason was properly excluded.

It is true, that the object of the testimony is not very artificially or clearly stated, but enough is stated to show that it was the object to prove that Peter Kite's mind, owing to an injury he had received upon the head, was not in its normal condition. It had been proved by these two witnesses, whose testimony was assailed, that he was at home on the night of the murder, and that he was there accessible to the defendant, and of course might be called as a witness if there was nothing to prevent his being examined, and his non-introduction by the defendant unexplained, might justly be the subject of injurious comment. In this view, the defendant had a right to show, if he could, that said Peter Kite's mental condition was such that he could not be introduced as a witness. We think the testimony was competent and should have been admitted. How much weight the jury would have given to it is not for us to determine.

During the progress of the trial, the State had introduced two witnesses, James Roark and Ellen Byas, each of whom had delivered damaging testimony against the prisoners, and had been subjected to a rigid cross-examination.

The State, in support of their testimony, introduced and examined several witnesses as to the general character of said witnesses, Roark and Byas, who testified

that they were acquainted with their general character, and from that they were entitled to credit upon their oaths.   Upon cross-examination of these sustaining witnesses, it was developed that Ellen Byas was a lewd woman, and that James Roark had been charged with larceny.   When the State closed, the defendants offered to introduce countervailing witnesses as to the general character of said Roark and Byas, to which the attorney-general objected, and the objection was sustained by the court, and defendants were not permitted to introduce and examine said witnessess.

No reason is stated for the State's objection to the introduction of these witnesses, or in the action of the court upon the objection, why they were excluded, and none appears to us.   This action of the court was clearly erroneous.

In the argument of the cause a difference arose between the counsel for the State and the defendants, as to the testimony of the prosecutor, James Hunter. Testimony had been offered tending to show that the tracks of the persons that were discovered after the murder leaving the house, were wide apart and larger than the tracks approaching the house, and appeared to have been made by persons running.   A witness had testified that one of the defendants, in speaking of the appearance of the tracks that were said to have the appearance of the tracks of persons running, had said: : "Oh, pshaw! that was us boys." Counsel for the defense, as explanatory of this remark, was insisting that Hunter, the prosecutor, had testified that on the next morning after the killing, when the defendants.

were present, and they were measuring the tracks and comparing the feet and tracks of the defendants, Hoard, with those that were discovered, and that they had run and jumped to make tracks that morning, and that was · what the defendant referred to when he used the expression above stated. The counsel for the State denied that the prosecutor had made any such statement in his testimony, and this was the contention between the counsel. The court, upon his own motion, told the jury that the prosecutor had made no such statement, to which the defendants excepted, and this is assigned as error. It is insisted that the constitutional provision that the court may state the testimony and declare the law, applies only to his charge, and it is error for him to attempt to do so at any other time.

We held, in a recent case at Nashville, that the court, under said provision had a right, upon a controversy between counsel pending the argument of the cause as to what the testimony of a witness was, to state it to the jury. The only difference between that case and this is, that the court there stated to the jury what the witness had said in his testimony. Here he told them that the witness had not made any such statement as that contended for by the defendant's counsel, but did not undertake to state what the testimony was.

In view of the possibility of the judge, during a long and tedious trial, failing to hear or remember all of the testimony of each witness examined, we think it would have been more satisfactory to have

recalled the witness and had him state whether or not he had delivered the testimony as contended for by the defendant's counsel, but we are not prepared to say it was reversible error in the court to make said statement to the jury, especially as the record fails to to show that the defendants offered to recall the witness and examine him as to what his statement had been.

In support of their motion for a new trial, the defendants introduced their own affidavit, together with the affidavits of J. M. Morelock and Isaac M. Swaney. In their affidavit the defendants state, among other things, that they had learned since the rendition of the verdict against them, that Joseph Good, one of the jurors who tried the case and rendered said verdict, had formed and expressed an opinion previous to his selection as a juror; that there had been a previous mistrial of the case, and that as they are informed and believe, said juror had expressed his regret that he had not been a juror on said former trial, and stated that the defendants ought to be hung, or that he would have hung them; that said juror had stated upon his examination, that he had not formed or expressed any opinion as to their guilt or innocence, and they were ignorant that he had done so when they elected him as a juror, and until after the verdict was rendered.

The affidavits of said Morelock and Swaney each stated that at Ernest's Mill, in Greene county, Tennessee, after the first trial of the cause, they had a conversation with said juror, Good, who stated that

he was summoned as a juror on the former trial, or
had been sent for, but that he did not go, but he
wished he had gone, or been on said jury; that he
wanted the defendants hung; that he would have hung
them if he had been on the jury, or words to that
effect.   They say they are in no manner related to
the defendants, and are entire strangers to them.   They
were brought into court and cross-examined in open
court, where they made substantially the same state-
ments.   The State introduced the affidavit of the juror,
Good, who denied the statements imputed to him by
said Morelock and Swaney; says they were mistaken;
admits that he was at Ernest's Mill and had a con-
versation with said witnesses; says he had never formed
or expressed any opinion as to the guilt or innocence
of the defendants; says he had never heard the evi-
dence in the cause; "thinks it *probable* he did say
that if the proof was sufficient to hang them as the
murderers of Mrs. Hunter, they ought to be hung, or
if the proof showed them guilty, a juror ought to
have gizzard enough to convict them, or something to
that effect," but does not undertake to state any more
definitely what he did say to these witnesses.   Upon
being brought into court and cross-examined, he states
"that, he was summoned as a juror on the former trial
one evening, but did not attend until the next morn-
ing, when he went to court, but the jury was made
up and he was not called; admits that he did re-
main in the court-house, he thinks, about one hour,
and heard and listened to the testimony of the pros-
ecutor, Hunter, until his examination in chief was

about concluded; admits that he heard the prosecutor testify as to how his wife was killed when she was killed; something about the Hoard boys being there the next day, measuring their feet and making tracks," but says he did not form any opinion.

The testimony in chief of the prosecutor, as it appears in this record, is very material, and is well calculated to make an impression highly prejudicial, to say the least of it, to two of the defendants.

It is proper to state that both of the witnesses as to the expression of opinion as · to the guilt of the defendants, by the juror, Good, are shown by testimony to be men of good character and standing, as is also the juror himself.

We think the decided weight of the testimony is, that this juror had formed and expressed a decided opinion as to the guilt of the defendants, and was incompetent.

This is a much stronger case than *Johnson* v. *The State*, 11 Lea, 47, which went a step further in sustaining the verdict where a juror had expressed an opinion, than any previous reported case. In that case it did not appear that the opinion expressed by the juror was founded upon what purported to be evidence that had been or would be introduced on the trial, or that he had conversed with any witness, or any one who had heard a witness. Here the juror, by his own admission upon cross-examination, had heard the testimony in chief of one of the principal witnesses for the State, and by the testimony of two credible witnesses, wholly uncontradicted, ex-

cept by himself, had expressed a decided opinion that the defendants ought to be hung. He was not in a condition to give the defendants that fair and impartial trial which the law guarantees to them.

Some exceptions have been taken to the charge of the court, but without entering into a critical examination of them, it is sufficient to say we think the charge, as a whole, is substantially correct.

For the errors above specified the cause must be reversed and a new trial awarded the defendants. As the case is to be again tried, we have purposely refrained from any expression or intimation of opinion as to the facts presented by the record.