CHARLES A. HILL *v.* STATE OF TENNESSEE.

(*Nashville.* December Term, 1928.)

Opinion filed June 15, 1929.

298

LeRoy McGregor and W. C. Cherry, for plaintiff in error.

W. F. Barry, Jr., Assistant Attorney-General, for the State.

Mr. Justice McKinney delivered the opinion of the Court.

Charles A. Hill, referred to herein as the defendant, was charged in a three-count indictment with embezzlement, larceny and fraudulent breach of trust. The court instructed the jury to disregard the embezzlement count. They returned a general verdict of guilty and fixed the maximum punishment of the defendant at four years in the penitentiary.

The facts constituting the offense, as charged in the several counts, are that the defendant, being the secretary and treasurer of the Charles A. Hill Company, a corporation, on November 21, 1924, issued a check on the corporation bank account in favor of George Cole Motor Company for $500, in payment of his personal obligation, which check he stubbed on the corporation's books as a payment to the firm of Patton & Arnold for millet seed. It was alleged that this was done with the fraudulent intent and purpose of depriving the corporation of said sum. It is important to note that the defend-

ant is not charged with collecting a specific sum from a third party and converting same, but he is charged, in effect, with misappropriating general funds received by the corporation and placed in bank to its credit, which funds were under his control as the agent of the corporation.

It is insisted by the defendant that the facts charged constitute embezzlement rather than larceny or fraudulent breach of trust.

Larceny, embezzlement and fraudulent breach of trust are made distinct offenses by our statutes, notwithstanding they are closely related and are frequently referred to as larceny, statutory larceny and larceny after trust.

One of the essential elements of larceny is a trespass. Where the original taking was lawful or with the consent of the owner, this element is absent and the wrong does not constitute larceny.

To constitute embezzlement the money or property must come directly from a third person into the hands of the employee, in the course of his employment, and be appropriated by him before it goes into the possession of the employer. *State* v. *Matthews,* 143 Tenn., 463; *Lambeth* v. *State,* 3 Shannon's Cases, 754; *Johnson* v. *State,* 9 Baxt., 281.

Learned counsel for defendant in their brief say:

"In embezzlement the employee or officer takes out of a general fund of the employer personal property or money and converts it to his own use. This sum so taken does not come from any particular separate asset received by him for his employer. *In fraudulent breach of trust he converts a distinct separate asset of the employer to his own use before it is mingled with the general funds*

*of the employer.* In the Rowen case the defendant was convicted in two cases of fraudulent breach of trust, and each was a fraudulent breach of trust and not embezzlement, because in the one instance he took a check from a lady depositor on the trust to deposit its proceeds in the bank, and appropriated it, so far as the record shows, to his own use, having failed, certainly, to ever mingle it with the general funds of his employer. In the second case, he sold to one Buster Phillips a certificate of deposit for which he received money which it was his duty to deposit in and mingle with the general funds of his employer, but the record indicated that he appropriated it in violation of this trust.''

Counsel are in error. The authorities cited above are to the contrary. In the two cases of *Drew Rowen* v. *State,* from Davidson Criminal, in which memorandum opinions were filed, the convictions were for embezzlement, and properly so since the funds appropriated were never mingled with the general funds of the bank.

As we view this case, the transaction, made the basis of the indictment, was not larceny because there was no trespass; it was not embezzlement because the fund was not received from a third party for the employer, but the misappropriation was from the general funds of the employer, over which the defendant alone had control, and falls within section 6580 of Shannon's Code, which defines fraudulent breach of trust as follows:

''The fraudulent appropriation of personal property or money by any one to whom it has been delivered on deposit, pledge, sequestration, or to be carried or repaired, or in whose hands or under whose control it may be by his position as clerk, agent, actor, or bailee, or on any other contract or trust by which he was bound to

deliver or return the thing received or its proceeds, is a fraudulent breach of trust."

A direct authority is *Raine* v. *State,* 143 Tenn., 168, in which an officer of a bank was convicted of fraudulent breach of trust upon the theory that he was in control of the funds of the bank.

Embezzlement is a criminal breach of trust, but every breach of trust is not embezzlement. 20 C. J., 423.

The embezzlement statute is limited in scope. The fraudulent breach of trust statute is more comprehensive and covers many acts of wrongdoing not embraced in the embezzlement or larceny statutes.

In *State* v. *Abernathy,* 153 Tenn., 449, the transaction, made the basis of the indictment, was similar to the one in the instant case. In the opinion it was stated, inadvertently, that the facts did not constitute fraudulent breach of trust. That question was neither involved nor considered. In that case two counts alleged identical facts. Having been acquitted on the first count, it was held that the accused could not be convicted at a subsequent term on the second count, and that the trial court correctly sustained his plea of *autrefois acquit.*

We find it unnecessary to discuss the facts at length. They are few and simple. The defendant owned half of the stock of the corporation, the other half being owned by John M. Butler, Sr., of Murfreesboro. The defendant was secretary and treasurer and general manager of the corporation and was in active control of the business and of its finances. Butler did not participate in the management and control of the business but entrusted everything to the defendant. The defendant drew a salary of $200 per month and was to have a bonus of six per cent. of the net profits at the end of each year. The

defendant insists that he had authority to overdraw his account; that the transaction here involved was simply a mistake, his intention being to charge the $500 check to his individual account. The by-laws confer no such power upon him and his authority to do so is denied by Mr. Butler. If this were the only transaction of this nature, his defense would be more plausible, but it appears that this is but one of many transactions by which he diverted thousands of dollars of the funds of the corporation to his personal use. In addition thereto his personal account was more than $10,000 overdrawn.

With respect to the specific transaction for which the defendant was indicted, it is shown that the corporation did not owe the firm of Patton & Arnold any sum, and that when said firm made shipments to the corporation they invariably attached drafts to bills of lading so that the consignee could not gain possession of the commodity shipped without first paying for same.

Miss Smith, bookkeeper for the corporation, testified that it was a part of her duty to fill in checks and drafts to be signed by the defendant, but that the defendant would frequently fill in checks himself and make the stub entries. She further testified that after November, 1922, the defendant withheld the canceled checks from her and that she had made several requests of the defendant for them and each time he would give an excuse, but that he never let her have them so that she could make proper entries and balance the books.

Furthermore, the record shows numerous instances of false entries on the books of the corporation by the defendant and false income tax reports which he verified. In this court the defendant is presumed to be guilty and must establish his innocence by a preponderance of the

testimony. In view of what we have outlined above, there can be no doubt as to the guilt of the defendant.

As was said in *State* v. *Leonard,* 46 Tenn., 310, it is the duty of the court to enforce criminal law and not to search for unnatural circumstances for pretexts or means to screen offenders from the punishment due to their crimes.

We consider the audit of the books of the State sufficiently full and accurate to sustain the conviction. The defendant knew more about the books than any other person and he has not seriously nor satisfactorily contradicted the audit.

■ Error is assigned on the action of the court in permitting the State to introduce witnesses to sustain the character of Miss Smith.

As a general rule full credit must be given to the statements of a witness, unless his testimony has been discredited in some manner recognized by law. *Graves* v. *Fitzgerald,* 46 Tenn., 644.

Until the testimony of a witness is questioned in some way there is no occasion to sustain his character.

One of the modes by which a witness is attacked is by the testimony of other witnesses that the facts about which he has testified are other than he has stated. 28 R. C. L., 614.

Likewise where the witness has been subjected to a rigid cross-examination. *Richmond* v. *Richmond,* 18 Tenn., 345; *Hoard & Kite* v. *State,* 83 Tenn., 322; *Warfield* v. *Railroad Co.,* 104 Tenn., 79; *Coal, Iron & Railway Co.* v. *Minton,* 117 Tenn., 428.

Miss Smith was closely cross-examined, and her testimony is in direct conflict with that of the defendant; also with that of the witness Vincent, though on an immaterial matter.

This is a matter resting largely in the discretion of the trial court. *Smith* v. *Tune,* 2 Higgins, 511.

The trial court was fully justified in permitting the State to sustain the character of Miss Smith.

Finally, it is insisted that the court committed error in permitting Miss Smith, in rebuttal, to contradict certain testimony of the witness Vincent.

Vincent, the friend and present employer of defendant, testified, in his behalf, that the corporation leased a part of a warehouse which he occupied, and that he found a bundle of canceled checks of the corporation in one of his desk drawers, and on a particular day saw Miss Smith examining them.

This testimony was evidently given for the purpose of reflecting upon Miss Smith, and it was entirely proper for her to take the stand and deny it. She testified that she had never seen these checks, but was told by Vincent that a bundle of these checks were in his desk and that he would have nothing to do with them.

Counsel concede that this was an immaterial matter, and if not strictly competent, in the circumstances, we are unable to see how the defendant could have been prejudiced thereby.

In our opinion, the record contains no reversible error, and the judgment of the trial court will be affirmed.