Robert Martin **HOWARD, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Oct. 25, 1973.

Certiorari Denied by Supreme Court Feb. 4, 1974.

Julian P. Guinn, Paris, William D. Howell, Dover, for plaintiff in error.

David M. Pack, Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashvillè, W. B. Lockert, Jr., Dist. Atty. Gen., Ashland City, for defendant in error.

## OPINION

OLIVER, Judge.

Convicted of voluntary manslaughter in the Circuit Court of Stewart County and sentenced to not less than two nor more than five years and one day in the penitentiary, Howard has duly ,perfected an appeal in the nature of a writ of error to this Court.

By his first two Assignments of Error he makes the usual assault upon the sufficiency of the evidence. It may be summarized briefly. About 5:00 p. m. November 16, 1971 the defendant went to the Traveler's Inn where he was later joined by the deceased Bobby Lancaster and the latter's cousin James Lancaster, neither of whom the defendant knew previously. The defendant played a machine called the shuffleboard game and he and the deceased bet on the outcome, with the deceased winning three or four dollars. Apparently both men had a hobby of gun collecting, and the defendant brought in an unloaded gun from his truck and showed it to the deceased, and after some discussion in which the deceased indicated he was not interested in buying the gun, the defendant replaced it in his truck. After a brief visit to a pool room where the defendant again sought to show his gun to the deceased but the pool room owner would not permit the

gun inside, they returned to the inn and were joined there by Roger Sills. The defendant and the deceased played the shuffleboard machine again and made bets. The talk turned to knives. The defendant and Sills testified that James Lancaster showed a pocket knife he was carrying but Lancaster denied that he or the deceased had a knife. The defendant brought in a hand-made hunting knife, which the deceased stuck in the top of the bar. An employee told the defendant he should not have the knife in there, and the defendant took it back outside. Sills testified that the defendant was angry over the incident, but Lancaster testified otherwise.

After the inn closed, Sills, the defendant and the Lancasters went out to the defendant's truck where he mixed drinks for all of them, and Sills soon left.

Lancaster testified that after Sills' departure the defendant and the deceased were sitting in the defendant's truck—the deceased on the driver's side; that he himself was standing outside near the rear wheel of the truck; that he heard no conversation inside the truck, but about five minutes later he heard a gun fire and the deceased jumped out of the truck, holding his chest, and said "I'm shot, I'm hurt bad"; that the deceased ran a short distance and fell and told him to tell his wife what had happened and died a few minutes later; that neither he nor the deceased had a knife; and that there was no design or attempt to rob the defendant. The deceased died from a gunshot wound in his chest.

When the defendant was arrested and was advised concerning his constitutional rights, he told the officer that he, the deceased and two other men were playing the shuffleboard machine and had some drinks at his truck; that he was sitting on the passenger's side and the deceased near or under the steering wheel; that he had broken a $50 bill and had lost four to five dollars betting; that Lancaster stuck a knife in him and said he wanted the money; and that he "got ahold of" the gun and shot Lancaster. The defendant showed the officer two red spots, described as similar to that made by a sharp object pressed against the skin. The defendant gave the officer the gun used in the shooting, and expressed surprise that the deceased had died.

The defendant testified that he was carrying $250 for the purpose of buying a truck motor; that before showing the gun to the deceased he unloaded it, and afterwards reloaded it and placed it under a blanket on the front seat of his truck; that he had broken a $50 bill to pay for a beer; that after Sills left, he was seated in his truck behind the steering wheel and the deceased was standing next to the open truck door; that the deceased asked him where the gun was and, after he told him, said, "James" and James Lancaster then came over and stuck him in the side with a knife; that when "I said you boys ain't going to get my gun" James Lancaster again stuck a knife in his side; that the deceased then reached across the steering wheel and tried to get the gun; that when he told them to "get back away from me, . . . and then James raked his knife across my side, I thought he had cut me in two there," that he then got his gun and fired but was not aiming at anyone and was not sure if he hit the deceased; that the deceased and James Lancaster ran off, and he drove his truck away as fast as he could; that he then went to the Silver Hoof and stayed there for 35 minutes, because he had told the Lancasters where he lived and he didn't want trouble for his family; and that he inspected himself and found two small wounds and a ridge where he had been scraped with the knife.

A physician testified as a defense witness that he examined the defendant on November 18 and found two small bruises in his side and a very small break in the skin but no medical treatment was required.

The indictment charged the defendant with first degree murder in the killing of

Bobby Lancaster. Voluntary manslaughter "is the unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man, and thus negative malice. T.C.A. § 39–2409. Whitsett v. State, 201 Tenn. 317, 299 S.W.2d 2, 6; Nelson v. State, 65 Tenn. 418, 421." Smith v. State, 212 Tenn. 510, 370 S.W.2d 543.

In Cooper v. State, 210 Tenn. 63, 76, 356 S.W.2d 405, 411, the Court said:

"The general rule is that 'if a man kills another person, upon sudden heat produced by adequate provocation it is voluntary manslaughter'. There must be sudden heat from such provocation to negative malice. Young v. State, 30 Tenn. 200 and other cases."

■ The defendant's theory in this case was that he acted in his own necessary self-defense when, almost simultaneously, the deceased undertook to take his gun away from him and James Lancaster began cutting him with a knife. The trial judge thoroughly and fully explained to the jury the law of self-defense. The defendant's defense of self-defense presented a question for the exclusive determination of the jury. Arterburn v. State, 216 Tenn. 240, 391 S.W.2d 648; Nance v. State, 210 Tenn. 328, 358 S.W.2d 327; McGill v. State, Tenn.Cr.App., 475 S.W.2d 223.

By its verdict the jury rejected the defendant's theory that he acted in self-defense in killing the deceased, thus leaving this homicide altogether unexplained by the defendant.

■ Since proof of killing with a deadly weapon raises a presumption of malice sufficient to support a verdict of second degree murder in the absence of facts or circumstances rebutting that presumption, Nance v. State, supra; Bostick v. State, 210 Tenn. 620, 360 S.W.2d 472; Smith v. State, supra; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32; Fox v. State, 1 Tenn.

Cr.App. 308, 441 S.W.2d 491; Bailey v. State, Tenn.Cr.App., 479 S.W.2d 829, clearly the jury would have been warranted in convicting the defendant of second degree murder.

■ This being true, the jury also could elect to convict the defendant of the lesser offense of voluntary manslaughter, although the facts do not comport with the technical definition of that crime. In Reagan v. State, 155 Tenn. 397, 283 S.W. 755, the Court said this:

" '. . . But a criminal person may be holden for any crime, of whatever nature, which can be legally carved out of the act. If the evidence show him to be guilty of a higher offense, or of a lower, or of one differing in nature, whether under a statute or at common law, he cannot be heard to complain; the question being whether it shows him to be guilty of the one charged: 1 Bish.Crim. Law, sec. 791; Wright v. State, 8 Lea, 568. Manslaughter is merely a lower grade of homicide: Bish.Crim.Law, sec. 780. And, by statute, on an indictment for a public offense admitting of degrees, the defendant may be convicted of any degree lower than that charged in form: Code, secs. 5122, 5222. The defendant may, therefore, be convicted of manslaughter though murder be shown. Commonwealth v. McPike, 3 Cush., 181; Barnett v. People, 54 Ill. 325. And found guilty of manslaughter under an indictment for murder.'

"The jury, by their verdict, said that the plaintiff in error was guilty of the homicide. In fact, there is no theory upon which the plaintiff in error is guilty of technical involuntary manslaughter. He is guilty of a higher degree of homicide, although, for some reason, the jury on the first trial saw fit to convict him of a lower degree, which operated to limit the conviction in this case. But that is a matter about which plaintiff in error cannot complain."

■ Considered in the light of the rules governing appellate review of the evidence when its sufficiency is challenged in criminal cases, so often stated and so well known, Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; Chadwick v. State, 1 Tenn.Cr.App. 72, 429 S.W.2d 135, we cannot say that the evidence in this record preponderates against the verdict of the jury and in favor of the defendant's innocence.

■ The sentence being within the statutory limits of punishment for voluntary manslaughter (T.C.A. § 39–2410), the Assignment that it was corruptly motivated by passion, prejudice and caprice on the part of the jury is untenable. Hunter v. State, 222 Tenn. 672, 440 S.W.2d 1; Yearwood v. State, 2 Tenn.Cr.App. 552, 455 S.W.2d 612; Bailey v. State, supra.

■ Also without substance is the defendant's contention that the court erred in allowing the State to introduce proof as to the character of State witness James Lancaster.

In Hill v. State, 159 Tenn. 297, 17 S.W.2d 913, the Court held that admitting evidence to sustain the character of a witness lies within the discretion of the trial court, and that the court did not abuse its discretion in admitting the evidence where the witness' testimony was attacked by rigid cross-examination and was contradicted by the testimony of other witnesses. In this case, Lancaster's testimony was contradicted by the defendant, who presented four witnesses to testify to his own character. Under those circumstances, in our opinion the court did not abuse its discretion.

■ Voluntary manslaughter is not an infamous crime. T.C.A. § 40–2712. The judgment of the trial court is modified by vacating that portion thereof which erroneously adjudged the defendant infamous. Griffin v. State, 109 Tenn. 17, 70 S.W. 61; Brown v. State, 1 Tenn.Cr.App. 294, 441 S.W.2d 485; Bailey v. State, supra. As thus modified, the judgment of the trial court is affirmed.

MITCHELL and O'BRIEN, JJ., concur.