STATE of Tennessee, Appellee,

v.

Gabriel SILBERMAN, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Aug. 26, 1982.

Permission to Appeal Denied by Supreme Court Nov. 29, 1982.

Gordon W. Smith, Asst. Atty. Gen., Nashville, John W. Overton, Jr., Asst. Dist. Atty. Gen., Memphis, for appellee.

James B. Fisher, Jr., Memphis, for appellant.

## OPINION

DAUGHTREY, Judge.

The dispositive issue presented by this appeal concerns the sufficiency of the evidence to support the conviction of defendant Gabriel Silberman, a piano repairman, for fraudulent breach of trust. Silberman allegedly misappropriated parts of an electric player piano belonging to the prosecuting witness, Consuelo Wade. He was charged with fraudulent conversion of goods valued at over $200; he was found guilty by the trial judge, sitting without a

jury, and sentenced to not more nor less than two years imprisonment. Although the trial judge refused to specify the degree of the offense, the penalty actually imposed indicates that he found the defendant guilty of converting goods worth less than $200. T.C.A. §§ 39–4228, 39–4217, 39–4218. Because we find under Rule 13(e), Tennessee Rules of Appellate Procedure, that the evidence is legally insufficient to support the finding of guilt, we hold that the conviction must be reversed and the charge dismissed.

The principal stumbling block in this case, from the State's point of view, is the narrowness and specificity with which the indictment against the defendant was drawn. It charges that Silberman

... heretofore, to wit on the 13 day of June, A.D. 1979 ... in the County [of Shelby] did receive into his care, custody and possession from Consuelo Ann Wade, certain specific property, to-wit, assorted antique piano parts, of the value of $3,500.00, the proper goods and chattels of Consuelo Ann Wade, under a contract of trust between Gabriel Silberman and Consuelo Ann Wade, by which the Gabriel Silberman, undertook, promised and agreed ... that he ... would receive the said antique piano parts, clean them, repair them and return and deliver them to the said Consuelo Ann Wade, and in violation of the aforesaid contract, trust and agreement, the said Gabriel Silberman did not do as he undertook, promised and agreed, but did unlawfully, feloniously, falsely and fraudulently appropriate and convert the said antique piano parts to his own use. . . .

■ Initially it must be noted that allegations in the indictment concerning the defendant's failure to perform the contract as agreed do not make out a criminal offense but merely a breach of contract. The only crime alleged in the indictment is the fraudulent appropriation of the goods in question to the defendant's own use, in Shelby County on June 13, 1979.

As set out in Tennessee Pattern Jury Instructions—Criminal 28.09, the offense of fraudulent breach of trust (T.C.A. § 39–

4226) requires a showing (1) that property (or money) was delivered to the defendant by reason of his position as agent or bailee, or on a contract or trust by which he was obligated to deliver or return the property received or its proceeds; (2) that the defendant used or disposed of the property in question; (3) that its use or disposition was not authorized; and (4) that the defendant knew that such use or disposition was not authorized. The offense is punishable as larceny.[1]

The State argues that the evidence in the record is sufficient to establish the elements of the crime and shows that both "the delivery and the fraudulent appropriation occurred in Shelby County."[2] We conclude that while the record contains conclusive proof of delivery in Shelby County, there is insufficient proof of misappropriation.

Testimony at trial indicated that on June 13, 1979, the defendant, a Nashville resident, came to Ms. Wade's home in Memphis at her request. Ms. Wade wanted Silberman to recondition a Knabe electric player piano which had been in her family for some 40 years and which was then inoperable due to age and disrepair. The defendant and Ms. Wade agreed in writing that he would take the player parts from the piano back to his shop in Nashville, repair and return them in working condition, for a fee of $500.00. Ms. Wade made an initial payment of $190.00 on June 13. A week later she sent Silberman a check for $120.00, after he called her in Memphis and told her he would need more cash to pay for replacement parts for the piano.

Ms. Wade testified that despite repeated prodding, the defendant failed to carry out his part of the agreement in a timely fashion. She said that when contacted he gave various excuses for not returning to Memphis, including ill health, bad weather, and lack of help. Ms. Wade testified that Silberman offered to return the unrepaired parts in January 1980, but she referred him instead to her attorney. A short time later she secured a $3,500 default judgment against Silberman in the Shelby County General Sessions Court. At the same time, she turned the matter over to the Shelby County District Attorney's office, and an indictment was returned against Silberman in March 1980. In January 1981, the defendant, accompanied by his attorney, brought the piano parts back to Ms. Wade, unrepaired and in "filthy" condition. She gave him a receipt dated January 29, 1981, which listed the returned parts: "One bellow pump, one electric motor, one player action, one compression for player action, one roller action."

Ms. Wade testified that not all the parts originally taken by Silberman were returned, however. She noted that a belt from the piano's motor was missing, as was a drawer that held the piano rolls, a rubber bellows and tubing, and a leather protective cover for the works. She conceded on cross-examination that the belt was broken when received by the defendant and that the other missing parts were likewise worn and unusable. But she maintained that she needed to have them returned in order to obtain their serial numbers for purposes of replacement. She further testified that Silberman took the piano parts to Nashville with her permission and that to her knowledge he made no unauthorized use of the property while still in Shelby County.

Aside from the police officer who assisted Ms. Wade in making the criminal complaint that ultimately resulted in the defendant's arrest, the State offered no other proof.

The defense then produced testimony to show that the defendant and an assistant had brought piano parts back to "Gabe's Repair Shop" in Nashville, where they remained for "a year and a half altogether." There was also proof from Silberman's wife, from his landlord, and from a local health center that the defendant suffered from severe migraine headaches and from "some sort of heart problem" during this same period of time.

---

1. T.C.A. § 39–4228.

2. Brief of the State of Tennessee, Appellee, at p. 11.

The defendant himself detailed the various health problems he had suffered during the two previous years, including migraine headaches (sometimes as often as two or three times a day) and an "infection of the heart muscle." He said that his illness was so debilitating that it had prevented him from working much of the time and that as a result he had fallen into difficult financial straits. It was his poor financial situation, he said, that prevented him from being able to order new parts for Ms. Wade's piano and make the necessary repairs. While he confessed to procrastination with regard to the Wade contract, Silberman maintained that he intended to abide by his agreement, and when it appeared that he could not do so, he returned Ms. Wade's unrepaired property to her. He denied having made any unauthorized use or disposition of the piano parts.

As for the missing parts, Silberman testified that these consisted of belting, tubing, and bellows made of rubber and other "flexible materials" that had decomposed with age. Some of the tubing, he said, had crumbled and fallen off in transit from Memphis to Nashville, and he had thrown away the other disintegrating materials, intending to replace them later. Thus, he testified, none of the "missing parts" had any intrinsic value.

It was the defendant's theory that his dispute with Consuelo Wade was essentially a civil matter, involving breach of contract, and that he had committed no criminal offense in Shelby County. The State sought to impeach the defendant and his character witnesses by questions concerning Silberman's recent conviction in Davidson County for fraudulent breach of trust involving failure to return piano keys entrusted to him for repair, as well as his arrest on several worthless check charges. The defendant sought to explain these charges in terms of the same financial difficulties which had caused him to breach his contract

with Ms. Wade. He testified that the worthless check complaints had been dismissed upon payment of the amounts due.

■ The crime of fraudulent breach of trust and the "kindred offense" of embezzlement, State v. Oliver, 175 Tenn. 624, 136 S.W.2d 722, 723 (1940), were unknown at common law. Under common law, larceny required a trespass and thus did not embrace misappropriation of property that had come lawfully into the defendant's possession. See generally, Hill v. State, 159 Tenn. 297, 17 S.W.2d 913 (1929). To remedy this obvious deficiency in the law, statutes were enacted to prohibit the conversion of money or property entrusted to and subsequently misappropriated by an employee, agent, public official, bailee, or trustee.[3] Thus, under Tennessee law,

> ... it is the fraudulent appropriation of the property which constitutes the offense [of fraudulent breach of trust], and not the hiring or obtaining possession as bailee, and consequently the place where [the fraudulent appropriation occurs] is the place where the offense is committed and where it is punishable.

Lovelace v. State, 80 Tenn. (12 Lea) 721, 723 (1883). Accord Burke v. State, 157 Tenn. 105, 6 S.W.2d 556, 558 (1928); Gaston v. State, 506 S.W.2d 802, 804 (Tenn.Crim.App. 1973). See generally Annot., 80 ALR3d 514 (1977).

In Lovelace, the Tennessee Supreme Court pointed out that in 1841 the legislature had provided that one who obtains possession with the intent at the time the property is received to convert the property to his own use is guilty of false pretense. Id. at 722–23, citing Acts 1841, ch. 48, sec. 1, now T.C.A. § 39–1901. To cover the situation in which the intention to steal does not exist at the time possession is obtained, the Lovelace court said, the legislature later created the offense of fraudulent breach of trust. See Acts 1855–6, ch. 17, sec. 1, now

---

**3.** In Tennessee, the statutes distinguish between misappropriation following possession obtained by virtue of one's employment, which gives rise to a charge of embezzlement under T.C.A. §§ 39–4231 and 39–4232, and misappro-priation following other authorized possession, which gives rise to a charge of fraudulent breach of trust under T.C.A. § 39–4226. See also T.C.A. § 39–4229, prohibiting conversion of proceeds of a trust fund.

T.C.A. § 39–4226. Thus, the court held, one who hires a horse in Alabama without unlawful intent, brings the horse to Tennessee, sells it here and converts the proceeds to his own use has committed the offense of fraudulent breach of trust in Tennessee.

██ Under the rule laid down in *Lovelace,* it appears that if the defendant in this case committed the offense of fraudulent breach of trust by converting the Wade piano parts to his own use, he did so in Davidson County and not in Shelby County. The proof clearly fails to support the State's theory, argued on appeal, that the defendant appropriated the property to his own use when he took possession of it in Shelby County on June 13, 1979, and prior to the time he removed it to Nashville.

Cases subsequent to *Lovelace* indicate that the defendant in that case might also have been subject to prosecution in Alabama for failure to return the horse as promised (assuming, of course, that Alabama law is the same as Tennessee's). *See, e.g., State v. Knight,* 616 S.W.2d 593, 594–595 (Tenn.1981) (venue in embezzlement case lies in county in which defendant fails to account); *State v. Oliver, supra* (prosecution for fraudulent breach of trust maintainable in county in which there was a duty to account). However, there is insufficient proof in the record before us to establish that the defendant actually failed to return the property covered by the contract. The proof further suggests that any piano parts not returned to Ms. Wade were implicitly disposed of with her authorization as part of the repair process. Moreover, the defendant's failure to make the specified repairs was clearly a civil matter involving breach of contract and not within the contemplation of T.C.A. § 39–4226. Finally, we note that if there was a breach of duty to return, it occurred sometime after June 13, 1979, the date specified in the indictment.

Rule 13(e) of the Tennessee Rules of Appellate Procedure require us to set aside a finding of guilt in a criminal case "whether by the trial court or jury . . . if the evidence is insufficient to support the findings by the trier of fact of guilty beyond a reasonable doubt." We conclude that the trial judge's determination that the defendant misappropriated goods worth less than $200 in Shelby County on June 13, 1979, cannot be permitted to stand under the standard of review mandated by the rule. We therefore reverse the judgment entered in the trial court.

Reversed and dismissed.

TATUM, J., concurs.

SCOTT, Judge, dissenting.

I respectfully dissent.

Fraudulent breach of trust is defined in TCA § 39–4226 as follows:

The fraudulent appropriation of personal property or money by anyone to whom it has been delivered on deposit, pledge, sequestration, or to be carried or repaired, or in whose hands or under whose control it may be by his position as clerk, agent, factor, or bailee, or on any other contract or trust by which he was bound to deliver or return the thing received or its proceeds, is a fraudulent breach of trust. So is the fraudulent appropriation of certain specific property by anyone to whom it has been delivered on a contract of loan for use, or of letting and hiring, after the time at which, according to the contract, the right of use acquired thereby has ceased, or before that time, by a disposition not authorized by the contract.

This criminal offense first came into our law in Chapter 113, Section 17 of the Acts of 1855–1856. The intent of the legislature was to make the failure and refusal to return the thing received or its proceeds a felony. *State v. Leonard,* 46 Tenn. (6 Cold.) 307, 309–310 (1869).

The essence of fraudulent breach of trust does not embrace any intent to deprive the true owner of his property, but fraudulently to "appropriate" the same to the defendant's use. *Raine v. State,* 143 Tenn. 168, 226 S.W. 189, 196 (1920).

The various definitions of "appropriate" are found at 6 C.J.S. (Appropriate), p. 122, as follows:

In its primary sense, the word has been defined as meaning to claim or use by an exclusive right; to deprive or take away from one to whom a chattel belongs, and to devote it to the exclusive use and benefit of him who appropriates it; to exercise dominion over an object to the extent and for the purpose of making it subservient to one's own proper use or pleasure; to make a thing one's own; to set apart for a use in exclusion of all others; to take as one's own by exclusive right; to use an article of property as an exclusive and preeminent right; to take from another to one's self, with or without violence; to take to one's self to the exclusion of others.

It matters not how good the intention of the defendant may have been at the time of the misappropriation, and matters not how honestly he intended to return the property he misappropriated. *Raine v. State,* supra. Good faith is not a defense to fraudulent breach of trust. *McCommon v. State,* 185 Tenn. 613, 207 S.W.2d 333, 335 (1948).

Venue is laid in fraudulent breach of trust cases where the "appropriation" of the property takes place, not necessarily where the possession was obtained. *Lovelace v. State,* 80 Tenn. (12 Lea.) 721, 723 (1883). However, venue need only be proven by a preponderance of the evidence, which may be either direct or circumstantial or both. *Smith v. State,* 607 S.W.2d 906, 907 (Tenn. Cr.App.1980).

In circumstantial evidence cases the circumstances must be consistent with guilt and inconsistent with innocence, and must exclude every other reasonable hypothesis except that of guilt. *Lancaster v. State,* 91 Tenn. 267, 18 S.W. 777, 781 (1892). The facts must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that the accused is the one who committed the offense. *Marable v. State,* 203 Tenn. 440, 313 S.W.2d 451, 456 (Tenn.1958).

Viewing the controverted proof in light of these well established principles, it is clear to me that any rational trier of fact could find the appellant guilty beyond a reasonable doubt. The circumstantial evidence was sufficient to establish all the elements of the offense, including the fact that the appellant fraudulently "appropriated" the piano parts to his own use, and that the fraudulent misappropriation took place at the time he took them from the victim's home in Shelby County. His prior conviction in Davidson County for the same offense was strong evidence of fraudulent intent, rather than the good faith ascribed to the appellant by the majority, at the very moment of the taking. Rule 13(e), T.R.A.P., *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979).

The rules concerning appellate review are well settled. The findings of the trial judge at a bench trial have the weight of a jury verdict. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). The guilty verdict accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *Id.* On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

The majority holds that on June 13, 1979, in Shelby County, Tennessee, the appellant did not "fraudulently appropriate" the goods, because any appropriation of the property to his own use must have occurred later. Somehow, the majority has looked into the mind of the appellant and found that he had no fraudulent intent at that time.

The action of the majority in reversing and dismissing this conviction is, in my opinion, a substitution of this Court's judgment for that of the trial judge who saw and heard the witnesses in person and who was in a far better position to judge their credibility than are we, who have the benefit of only the cold record in written form. On appellate review of the sufficiency of the evidence, the inquiry is not whether the judges of the reviewing court believe that the evidence at trial established guilt beyond a reasonable doubt. Rather, "the rele-

vant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". (Emphasis in original) *Jackson v. Virginia,* supra, 99 S.Ct. at 2789. Examining this case in light of these principles, I am convinced that a rational trier of fact could find the appellant guilty beyond a reasonable doubt.

Thus, I would affirm the judgment of the trial court.