Arthur L. MALLORY, Commissioner of
Education, et al., Plaintiffs-Appellants,

v.

Mr. and Mrs. Lester DRAKE, parents of
Deborah Drake,
Defendants-Respondents.

No. WD 32450.

Missouri Court of Appeals,
Western District.

May 4, 1981.

John Ashcroft, Atty. Gen., Leslie Ann Schneider, Asst. Atty. Gen., Jefferson City, for plaintiffs-appellants.

Robert J. Goodwin, St. Louis, for defendants-respondents.

Before WASSERSTROM, C. J., Presiding, and SHANGLER, KENNEDY, JJ.

WASSERSTROM, Chief Judge.

The parents of Deborah Drake challenged her placement in State School for the Severely Handicapped No. 2 in Mapaville, Missouri ("the State School") and pursued their administrative remedies for a different placement. That administrative review culminated in a determination by a statutory special hearing panel to the effect that the State School was not an appropriate placement. The state authorities filed a petition for review in the circuit court, which affirmed the administrative panel. The state authorities now appeal to this court.

### I.

The case arises under the federal statute, Assistance for Education of All Handicapped Children, Pub.L. 94–142, 20 U.S.C. Sec. 1411, et seq., and the implementing Missouri statute Section 162.670, et seq.[1] The federal statute grants funds to the states for assistance in educating the handicapped. 20 U.S.C. Section 1411. To be eligible for those grants, the state must meet certain eligibility requirements set forth in 20 U.S.C. Section 1412. The first of those requirements is that the state must have in effect a policy that assures all handicapped children the right to a "free appropriate public education." This educational requirement has been met in Missouri by Section 162.670, which declares it to be the policy of this state to provide to all handicapped children "special educational services sufficient to meet the needs and maximize the capabilities of handicapped and severely handicapped children."

As a refinement upon the requirement of an "appropriate" education, the federal regulations further require that each handicapped child be educated in the "least restrictive environment." 45 C.F.R. Sec. 121a.550.[2] To carry out that concept, each state is called upon to "insure that a continuum of alternative placements is available to meet the needs of handicapped children for special education and related services." Sec. 121a.551. See in this connection *Stuart v. Nappi*, 443 F.Supp. 1235 (D.Conn.1978).

In selecting which facility in the continuum is best suited to the individual child, the concept of "mainstreaming" comes into play. That principle is set forth in 20 U.S.C. Sec. 1412(5)(B) which requires each participating state to establish procedures to assure "that, to the maximum extent appropriate, handicapped children * * * are educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes * * * cannot be achieved satisfactorily." That principle is implemented by Sec. 162.680–2 which provides that "[t]o the maximum extent practicable, handicapped and severely handicapped children shall be educated along with children who do not have handicaps

---

1. All Missouri statutory references are to RSMo 1978.

2. 45 C.F.R. has been redesignated and transferred to Title 34 of the C.F.R. Federal Register, Vol. 45, No. 227, p. 77363. However, 34 C.F.R. has not been published as of the date of this opinion.

and shall attend regular classes. Impediments to learning and to the normal functioning of such children in the regular school environment shall be overcome whenever practicable by the provision of special aids and services rather than by separate schooling for the handicapped."

Enforcement of the foregoing substantive requirements is left to a very substantial degree to procedures for complaint and hearings at the instance of the parents of handicapped children. *Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975*, 92 Harv.L.Rev. 1103 (1979). The procedural safeguards afforded to parents include the right to make protest and participate in conferences at the local school level, 20 U.S.C. Sec. 1415(b) and RSMo Sections 162.945 and 162.950; the right to a hearing at the state level, 20 U.S.C. Sec. 1415(c) and RSMo 162.961; and the right to court review, 20 U.S.C. Sec. 1415(e) and RSMo 162.-962.

## II.

The parties in this case substantially agree as to the pertinent facts. Deborah was originally enrolled in the local House Springs, Missouri school which is the Northwest Reorganized School District No. 1 ("Northwest"). She attended Northwest during the school year 1973–74, but in May 1974, testing was done as a result of which Deborah was diagnosed as severely handicapped and for that reason was reassigned to the State School. Her parents reluctantly agreed to that placement during the school year 1974–75, which they considered as a trial effort.

The parents were dissatisfied with the State School and they demanded reassignment either to Northwest or to the St. Louis Special School District. Such reassignment was refused by the state authorities, for the reason that they believed the placement in the State School to be the most appropriate and the most beneficial one for Deborah. The parents thereupon withdrew Deborah from the State School and instituted formal complaint and request

for hearing which resulted in the present proceeding. The administrative proceeding concluded with a determination by the special hearing panel which read in pertinent part as follows:

"The State Department of Education did not substantially demonstrate that the placement at the State School for the Severely Handicapped # 2 in Mapaville was the least restrictive environment.

"Therefore, the decision of this panel is that the child should be grouped with other severely handicapped children in a classroom located in a public school setting where she will have access to social interaction and modeling of less handicapped children."

## III.

For their first point on this appeal, the appellant state authorities contend that the decision of the special hearing panel "is ambiguous in that it fails to define the term 'public school' and therefore makes compliance impossible." They argue that the State School is just as much a "public school" as is Northwest. They further argue that a question exists whether they can comply with the decision by leaving Deborah at the State School and merely adding additional noneducational experiences with less handicapped children. The uncertainty professed by appellants in this regard has no real foundation. The administrative decision is crystal clear that the placement at the State School is unacceptable. Whatever else it means, at least there can be no doubt on the score that Deborah cannot be properly continued at the State School in Mapaville.

That is not to say that this decision was meant to require that Deborah necessarily be placed at Northwest. This phase of the problem will be next addressed under part IV of this opinion.

## IV.

For their second assignment of error, the appellants contend that if the panel's decision is interpreted to require place-

ment at Northwest, then the decision requires appellants to act beyond their authority. This contention is supported by two subarguments: (a) that such placement would be inconsistent with the statutory definition of "severely handicapped," and (b) that Northwest has already refused to accept Deborah and appellants have no authority to force such acceptance.

With respect to the alleged conflict of the decision with the statutory definition, Section 162.675(3) defines "Severely handicapped children" as being children under 21 years who "because of the extent of the handicapping condition or conditions ... are unable to benefit from or meaningfully participate in programs in the public schools for handicapped children." Appellants say that since the hearing panel specifically held Deborah to be severely handicapped, that means that she of necessity could not appropriately be placed in a regular public school. That argument leaves out of account Missouri Regulation 5 CSR 70–732.-010(4) which provides that "Local boards may provide programs for severely handicapped students." and (5) which goes on to provide "A local school district identifying severely handicapped students among its school-age population shall refer these students to the Division of Special Education, State Department of Elementary and Secondary Education, *unless that local school district provides a program for severely handicapped students.*" (emphasis added) These provisions of the regulation are also reflected in statutory provision 162.735 which states: "The state department of education may assign severely handicapped children, except severely handicapped children ... *in districts providing approved special educational services for severely handicapped children, to state schools. ...*" (emphasis added). Thus it is clear that placement of Deborah in Northwest would not violate any statutory prohibition—although for reasons stated below, we do not believe that the panel's order should be construed as directing that Deborah necessarily be placed in Northwest.

■ Appellants' argument with respect to the impossibility of their complying with the panels' order refers to an exchange of letters which took place between appellants and Northwest subsequent to the decision rendered by the hearing panel. On January 9, 1980, the assistant commissioner of the State Department of Elementary and Secondary Education wrote a letter to the Superintendent of Northwest stating in part as follows:

"On December 19, 1979, a special education placement hearing was conducted in accordance with the law for Mr. and Mrs. Lester Drake on behalf of their daughter, Deborah. As you know, Deborah is a resident of House Springs and has been served for several years at the State School No. 2 in Mapaville.

\* \* \* \* \* \*

The hearing panel found that although Deborah is a severely retarded young lady and although the specific educational program which we provide at Mapaville appears to be appropriate and responsive to her needs, it was the decision of the panel that she should be grouped with other severely handicapped children in a classroom located in a public school setting where she will have access to social interaction and modeling of less handicapped children.

To the extent that school districts are able to program for children such as Debbie, it has been our practice to encourage them to do so. Therefore, in accordance with the decision of the hearing panel I am requesting from you your consideration of either accepting for enrollment Debbie and other such severely handicapped children and youth at the Mapaville School for whom you have the facility and staff to provide educational programs or you may offer to us physical space within one of your buildings to enable us to carry out our program in a normal public school setting, as recommended by the hearing panel.

In the event you are unable to help us with either of these requests, it may be necessary for us to pursue other adminis-

trative remedies to challenge the decision of the hearing panel. However, we first want to make certain that, if possible, we can work matters out with less formal strategies.

Your prompt consideration and response to this request will be appreciated."

In response to that letter, the Superintendent of Northwest answered on January 17, 1980, as follows:

"I was aware of the placement hearing of Deborah Drake on December 19th. In fact, Dr. Jean José, our Director of Special Education, attended the hearing as an observer.

I have given a great deal of consideration to your requests: 1) accepting the enrollment of Debbie and other such severely handicapped children and youth from the Mapaville School using our staff; 2) or provide space within our buildings to have the state carry on a program in a normal school setting as recommended by the hearing panel. I am sorry that I can not help you in your request. We do not have any rooms available at this time. This year we have divided all available rooms possible to provide additional classrooms for our own special education program and the Special Services Cooperative of Jefferson County.

It appears it will be necessary for you to pursue some other avenue in placing Debbie."

Although the foregoing letters appear in the legal file as exhibits to the appellants' petition for review in the circuit court, those documents are not properly before us for consideration. Respondents filed no pleading admitting any part of the petition or its exhibits, and these documents are not listed in the stipulation of the parties regarding the evidence which should be considered by the circuit court. Nevertheless, all parties in this court have accepted these letters as authentic and the briefs on both sides discuss the contents and importance of those letters. The question as to the willingness of Northwest to handle Deborah and of what coercive powers appellants

have to compel Northwest to do so are potentially vital factors in this case, and the case itself deals with an issue of great public importance. Accordingly, this court will not close its eyes to the factual situation disclosed by this exchange of letters.

■ A resolution of the case in its present posture does not, however, require any determination as to the coercive powers of the state authorities over a local school board.[3] That is because we do not interpret the administrative order here to direct the placement of Deborah in Northwest to the exclusion of other possible choices.

The panel's decision states that Deborah's present placement is inappropriate, and in that regard the decision specifically refers to the State School by its full name. When the order comes, however, to the matter of where the new placement should be made, there is no parallel specificity, but rather the decision merely sets forth guidelines. There was excellent reason for this disparity. In fact, the hearing panel could not properly have made a specific choice in regard to future placement.

Both parties err in their common assumption in argument before this court that the sole choice for placement in this case lies between the State School and Northwest. To the contrary, Deborah's mother testified that in her conference with the school authorities she requested that consideration be given to placing Deborah in the special school district in the adjacent St. Louis County, but that this suggestion by her was rejected.

At the oral argument before this court, question was put to counsel for the parents as to whether there was any public school having a program suitable for Deborah at her level of retardation, and counsel responded that in addition to the special school district in St. Louis County, there is a suitable program carried on in the St. Charles School District. Parents' counsel further answered that Deborah could be placed in these schools if those schools

3. See however RSMo. Sec. 162.705–3 and 4.

would accept her, and that such placement is regularly done as a routine matter.

The members of the hearing panel unquestionably had some general knowledge with respect to the St. Louis and St. Charles programs just referred to and in all possibility they may have had in mind other schools, either public or private, with special programs which would meet the guidelines specified in the panel's determination. Such knowledge would normally flow from the statutory requirement that each member of the hearing panel "shall have some knowledge or training in the area of disability involved in the appeal." RSMo 162.961–2. Moreover, as specialists, they must have been aware of the authority on the part of appellants to place Deborah in the most appropriate of the many available schools which made up the continuum required by federal regulation Sec. 121a.551. As to the broad authority of the school officials to make such selection, see RSMo Sec. 162.-705–1 and Sec. 162.735.

The hearing panel could very properly conclude that it would be desirable for the school authorities to conduct the necessary investigation and make selection of the most appropriate school in the first instance, rather than for the hearing panel itself to undertake to make such an initial selection.[4] Indeed, there was not enough detailed evidence before the panel upon which such a selection could properly have been made. The great bulk of the evidence which was introduced at the hearing before the hearing panel spelled out in great detail the nature and extent of the program at the State School. In contrast, no evidence was introduced as to just what might be available at Northwest, nor was there any evidence as to how practicable it might be to create and institute some new program at Northwest not already existing there. Nor was there any such evidence pertaining to the special school district in St. Louis County, the St. Charles School, or any other public or private school having special pro-

grams suitable for consideration. In short, considering the nature of the record before it, the hearing panel had no real choice except to refer back to appellants the question of what new substitute placement should be made of Deborah.

Not only was this approach indicated as a legal matter, but also this solution is by far the most practical and expeditious. The argument between the Drake family and the school officials has been dragging on for years and Deborah, now 15 years of age, has gone without the benefit of public training or education since the fall of 1979. Investigation into what placements are available should proceed as rapidly as possible. It is to be hoped that in keeping with the philosophy of these statutes, the parents will be involved in the investigations and selection process and that a suitable selection agreeable to all parties can be reached between them without the necessity of resort to further legal hearings.

## V.

■ As their third point of alleged error, appellants contend that the hearing panel improperly excluded evidence offered by them concerning the validity of State Schools such as the one at Mapaville. In support of this point, appellants argue that the parents were permitted to introduce evidence as to invalidity of the State Schools, but that appellants were denied the opportunity of offering rebutting evidence on that issue.

The testimony on behalf of the parents to which appellants refer was that given by Dr. Bensky who testified generally to the effect that Deborah's placement in the State School was in too restrictive an environment. In the course of that testimony he made the following statement: "The placement of the handicapped student in the State School creates a situation whereby they are not a threat to the public school system. In addition, I think her basic civil

---

4. In *Hines v. Pitt County Board of Education*, 497 F.Supp. 403 (E.D.N.C.1980), a reviewing court left the choice to the school authorities as to placement of the handicapped child in any of three appropriate facilities. It should be noted that detailed evidence was introduced as to the programs available in each of those institutions.

rights are being violated by being placed in a restrictive environment such as State School # 2."

That testimony could possibly be construed as being an attack upon the whole concept of separating some handicapped children into completely separate facilities from normal students, but no objection was made to Bensky's testimony on that or any other grounds. In context his testimony can at least equally well be understood as being simply part of Bensky's evaluation of Deborah's individual situation in that particular State School, rather than a broadside assault against the whole philosophy of separate schooling in any degree for the severely handicapped.

The validity of State Schools as special facilities just for the severely handicapped was not in issue at any point in the proceedings and it is not an issue now. The whole focus of the administrative proceeding was, as it should have been, upon the individualized needs of Deborah and whether the State School and its program met her particular needs. Counsel for the parents took the position before the hearing panel and continue to take the position in this court that they are not attacking the general validity or concept of the special State Schools. The chairman of the hearing panel therefore committed no error and did not in any way prejudice appellants by his excluding as irrelevant the evidence proferred for the purpose of showing the general validity of the State School program.

The decision of the hearing panel, as construed by this opinion, is not vulnerable to the claims of error assigned by appellants. The judgment of the trial court approving that decision is therefore affirmed.

All concur.