**STATE of Tennessee, Plaintiff-Appellee,**

v.

**Timothy Eugene MORRIS,
Defendant-Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Oct. 12, 1982.

William H. Bell, James E. Stevens, Greeneville, for defendant-appellant.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, for plaintiff-appellee.

## OPINION

HARBISON, Chief Justice.

Appellant, Timothy Eugene Morris, was convicted in the Criminal Court of Greene County, Tennessee of murder in the first degree of Hunter David Tait. He was sentenced to death by electrocution. Appeal was taken to this Court as provided by statute, T.C.A. § 39–2406. After review of the trial record, the sentence and the briefs on appeal, we affirm the judgment of the trial court.

The principal issues raised on appeal pertain to the sufficiency of the convicting evidence. This was circumstantial in nature inasmuch as appellant denied committing the homicide, no murder weapon was ever found or traced to appellant, and there were no eyewitnesses. On the other hand, appellant and the deceased were last seen together on or about June 30, 1980, traveling from Townsend, Tennessee, toward Gatlinburg. The next day appellant appeared alone at the home of relatives in North Carolina in possession of a vehicle belonging to the deceased and containing several thousand dollars worth of inventory and personal property owned by the deceased. He also had possession of a check book and the financial records of the deceased, forged checks on the bank account of the victim and claimed that the victim had sold him the vehicle with all its contents for the sum of fifty dollars. A few days after appellant appeared in North Carolina and then in the area of his home in south Georgia and north Florida in possession of the property and checks of the deceased, the badly decomposed body of the victim was found in Greene County, Tennessee, near the North Carolina line and was subsequently identified through fingerprints as being the body of Hunter David Tait.

The decedent was approximately thirty-seven years of age and resided near Clinton, Arkansas. He was unmarried and lived alone. He was a skilled artisan in the manufacture of flower planters and other articles decorated with ornamental stained glass. Mr. Tait had established a cottage-type manufacturing business near his home and manufactured several thousands of dollars worth of stained-glass planters and other ornamental objects each year. He attended craft and arts fairs throughout the United States where he sold his wares, as well as making some direct sales from his home. He had purchased and equipped a pick-up truck with special seating and a camper bed in which he transported his wares, kept financial records and slept. He was well respected in his home community, and a number of his friends and neighbors testified at the trial of the case.

The deceased had left his home in Arkansas about June 7, 1980, to attend several craft fairs and exhibits in Tennessee. He had expected to return to Arkansas early in July, and his mother, who resided in Florida, had planned to visit him later in that month. Testimony showed that Mr. Tait had attended a crafts fair at the 100 Oaks Mall Shopping Center in Nashville near the middle of June, and it was while in Nash-

ville that he met appellant, Timothy Eugene Morris.

Appellant was twenty-seven years old at the time of the trial. He was married but living separately from his wife. Appellant also was gifted in various types of handicrafts. He had seldom worked steadily for any length of time and was described in the record as a drifter. He had had several prior criminal convictions for burglary, larceny and manslaughter. His father, stepmother and other relatives lived near the Georgia-Florida border and he had other relatives living in North Carolina.

Early in June 1980 appellant left Florida with two other young men intending to travel to Illinois. They were stopped in Crossville, Tennessee, where their car was impounded because of problems with registration and upon a complaint of a hitchhicker who had left a backpack in the car. Appellant and Terral Anderson hitchhiked to Illinois where they stayed for a short time at the residence of a friend. They then hitchhiked to Nashville, Tennessee, and it was there that appellant met the decedent Tait for the first time. He testified that Tait employed him to assist in the repair and assembly of the stained glass planters and other objects which Tait was carrying in his truck. The two left Nashville the following morning and traveled to several state parks for about a week prior to attending a crafts show in Townsend from June 27 to 29, 1980. Numerous witnesses testified to their presence together at Townsend during that show, and several witnesses testified that the two were seen leaving together in Tait's truck on the morning of Monday, June 30, 1980, traveling toward Gatlinburg. Appellant testified that Tait had had a successful show in Townsend and had sold several hundred dollars worth of merchandise. He claimed that Tait had paid him about two hundred dollars as commissions for his assistance in the preparation and sale of art objects at the Townsend fair. There was testimony that Tait had had some $10,000 worth of inventory on his truck when he originally left Arkansas.

Tait was shown to have contacted an official at the Smithville, Tennessee, craft show which was to be held on July 4. A letter and a deposit for an entrance fee were received in Smithville under Tait's signature dated July 1, 1980, and postmarked on that same date from Asheville, North Carolina.

Tait was never seen alive after he and appellant were seen driving together on the morning of June 30. Early on the morning of July 1, 1980, appellant arrived alone at the residence of relatives in Weaverville, North Carolina, in possession of Tait's truck and inventory. He told several relatives in Weaverville that he was engaged in selling the planters and other wares contained in the truck. He gave one relative a director's chair which had belonged to Tait, and to others he gave several of the planters and stained glass ornaments. He told several witnesses that he had come from Arkansas and that he was en route to Florida for a crafts show. He did appear in Hilliard, Florida, in the afternoon of July 3, 1980, where he met Becky Bladow and her brother. He had been acquainted with Miss Bladow for some time and dated her on several occasions after reaching Florida. During the next several days he cashed six checks on Tait's bank account, forging Tait's name as drawer, and making all of the checks payable to himself. He endorsed these and was assisted in cashing them at a grocery store and a liquor store by acquaintances in the area. He gave away a large number of the stained glass articles in the truck and sold others for a nominal price.

He stayed in the area of the Georgia-Florida border for approximately a month and left immediately after being interviewed by investigating police authorities. He was arrested early in September 1980 near the Mexican border, although he insisted that he did not intend to leave the United States but that he was en route with his wife to visit some of her relatives in California.

Two separate investigations into the fate of the victim, Hunter David Tait, were commenced, one of them in Florida and one in Tennessee. Ultimately officials of the two states made contact, and events surrounding his disappearance and the implication of appellant were pieced together by excellent investigative work. Trial of this case consumed many days and involved numerous witnesses from Tennessee, Arkansas, North Carolina, Georgia and Florida.

After Tait did not return to his Arkansas home his mother, Mrs. Hannah Walker, a resident of Florida, became concerned and caused an investigation to be commenced. She received a postcard from a neighbor of Tait in Arkansas, stating that he had not returned from his trip and was long overdue. On or about August 1, she went to the First National Bank in Merritt Island, Florida, where Tait had his business account under the name of Pine Mountain Glaziers and inquired whether there had been any recent activity in the account. She was shown a number of checks dated during July which she and the bank official immediately recognized as forgeries. She then went to the Rock Ledge, Florida, Police Department and filed a missing person report.

Since the checks were made payable to appellant and were endorsed by him, he was promptly drawn into the investigation. Mr. Henry L. Hines, Jr., an official of the Nassau County, Florida, Sheriff's Department investigated the area where the checks had been cashed and ultimately interviewed appellant in Jacksonville, Florida. At that time appellant was not accused of any offense and was not arrested. The investigation was conducted simply in an attempt to obtain information concerning the missing individual, Hunter David Tait. Appellant told Officer Hines that he had met Tait several months previously in the arts and crafts business and had worked for him. He stated that Tait was running out of money, needed funds, and that Tait had sold him his truck for fifty dollars. He said that the last time he had seen Tait was in a motel near Townsend, Tennessee, where Tait was waiting for someone to pick him up and take him back to Clinton, Arkansas. Appellant stated that Tait owed him money for work he had done and that he had been receiving checks from Tait by mail through General Delivery in Callahan, Florida.

Investigation by Hines revealed a number of discrepancies in this story, but when he tried to contact appellant further, he found that appellant had left the north Florida area and Officer Hines was never able to locate him again. He did observe Tait's truck, however, the camper which had been removed, and some of the remaining stained glass inventory. He also interviewed a number of relatives and other persons who had been with appellant during the period from early July until early August when appellant apparently fled the area as a result of the investigation.

Separately and independently of the Florida investigation, one had commenced in Tennessee upon the discovery of Tait's decomposed body near the Tennessee-North Carolina border in Greene County on July 6, 1980. The skull had obviously been severely crushed and the body was found in a remote area some 139 feet from a roadway where it had apparently been dragged through the underbrush. Some coins, a comb, a cigarette lighter and a few other items of personal property were found near the body, but no items of identification were found. Ultimately, on about August 5, 1980, fingerprints from the body were found by the FBI Laboratory in Washington to match those of Hunter David Tait. Tait had applied for employment with the FBI in 1961 and a set of fingerprints had been taken from him at that time.

After the body had been identified, Special Agent Robert Baird of the Tennessee Bureau of Investigation commenced an extensive investigation into Tait's background and the circumstances of his disappearance. He contacted Tait's mother in Florida and

was ultimately placed in touch with the Florida officials who had been separately investigating in that area. Agent Baird presented the case to a Greene County Grand Jury in early September 1980, and appellant was arrested in Texas the following day.

At the trial appellant testified that he had worked for Tait and had purchased his truck for fifty dollars. He said that he did not purchase the inventory but, in effect, admitted that he stole all of Tait's personal property from him. He testified that he left Tait near Townsend where Tait was expecting someone to pick him up to take him on a trip to the Bahamas. He denied the homicide, and as stated earlier, no direct incriminating evidence was found on appellant, such as a murder weapon, traces of blood or the like. Similarly there was no trace of blood in the truck which appellant was driving, which was registered and licensed to Tait in Arkansas. Appellant admitted that when he was driving from North Carolina to Florida in the vehicle he was stopped after passing an agricultural inspection station and he showed some Arkansas identification to the investigator at that time. He admitted having possession of Tait's checkbooks and admitted forging six checks, totaling several hundred dollars, on Tait's account in early July. He testified that he threw the remaining checks out of the window while he was driving from Florida to Texas in a borrowed car. He admitted borrowing the car and leaving the Callahan, Florida, area immediately after and as a result of his being drawn into the investigation and after being interviewed by Officer Hines.

Obviously the trier of fact was not required to accept the credibility of appellant or to believe his account of his acquisition of Tait's vehicle and personal property. *See Bass v. State,* 191 Tenn. 259, 231 S.W.2d 707 (1950). He admitted on direct examination to two prior convictions for burglary and larceny, and his own counsel, in arguing to the jury, admitted that appellant's story bordered on the preposterous. His assertions that Tait, a settled businessman with established habits, would sell his specially equipped truck for fifty dollars and leave on a totally unplanned trip to the Bahamas certainly strains credulity. Admittedly there were some gaps in the proof of the State, such as the absence of blood in the truck or clear identification of a murder weapon in the possession of appellant. Appellant was shown, however, to have been in possession of a collection of rocks, at least one of which could have been used to crush the skull of the victim. Obviously, any other rock or hard object could have accomplished the same purpose. Expert witnesses for the State testified that the body appeared to have been submerged in water, at least partially, for several hours. A sleeping bag which had originally been in Tait's truck was missing and never located. It was the theory of the State that appellant struck Tait at some point near a stream and ultimately removed his body to the site where it was discovered, probably dragging it from the roadway on the sleeping bag.

Although the evidence against appellant was circumstantial, it was obviously most incriminating. In our opinion it pointed unerringly to the guilt of appellant and was sufficient for the trier of fact to find guilt beyond a reasonable doubt. The date of death was fixed by experts at about June 30, 1980, and this coincides with the last date on which Tait was seen alive. If he lived long enough to post the letter to Smithville from Asheville on July 1, 1980, his death must have occurred immediately thereafter. It is of course possible that appellant found the letter among Tait's possessions and posted it himself. In all events, death must have occurred either on June 30 or July 1. Appellant was found in sole possession of Tait's truck and personal property early on the latter date, and Tait was never seen alive after June 30.

The evidence supports the conviction, and the issues challenging its sufficiency are overruled.

■ Error is asserted in the admission of statements made by appellant to Officer Hines in Jacksonville, Florida, and a later statement after his arrest and incarceration to Agent Baird in Greeneville, Tennessee. After a full hearing, the trial court found that the statements were voluntarily made and were admissible. The record sustains that finding. The statements made to Officer Hines in Florida were made at a time when appellant was neither in custody nor suspected of any offense. Tait's death had not been discovered at that time, and appellant was simply one of numerous persons interrogated for information in connection with a missing person report. When he later gave a statement to Agent Baird in Greeneville, he was given proper warnings as to his constitutional rights, was in no way coerced and gave the statements voluntarily. Further, none of the statements made to investigating officers were greatly different in content or in their incriminating nature from statements made by appellant to numerous relatives and other witnesses who testified as to how he came into possession of Tait's truck and inventory. There were differences in the details given, but at no time did appellant ever admit the homicide for which he was on trial. In the end, the testimony of the police officers as to appellant's statements was largely cumulative of the testimony of other witnesses.

■ Appellant insists that the prosecutor was guilty of misconduct in attempting to place into evidence a large rock which was apparently found among a box of other rocks collected by appellant and found in Tait's pickup truck. Appellant denied having possession of the particular rock complained of, and it was ultimately excluded from evidence. We find the issue with respect to that rock to be without merit.

■ Similarly without merit is a contention that the trial court erred in admitting pictures of other artistic works done by Tait, in addition to those which were found to have been in appellant's possession. The purpose of this testimony was to show the skill of Tait's artistry and the relative worth of items created by him, and we find no error in their admission.

■ Complaint is made of the admission of a photograph of the body of the deceased at the time it was discovered. The trial judge excluded all of the photographs offered by the State which in any way showed the head and face of the deceased, and the only photograph which he admitted into evidence was one showing the lower portion of the body lying in some underbrush. This illustrated the place and area where the body was found, was not prejudicial or grotesque and, in our opinion, was relevant to the question of the concealment of the body.

■ Complaint is also made that the trial court permitted the actual skull of the deceased to be used by expert witnesses to demonstrate the injuries thereon. The skull had been cleansed and was no more prejudicial or gruesome than a model or diagram would have been. There is no question but that the nature and type of injuries sustained by the deceased and the manner in which death occurred were relevant for consideration by the jury. The issue is without merit.

■ Complaint is also made of the admission into evidence of previous convictions of appellant for larceny and burglary. This testimony was actually brought out on direct examination of the appellant by his own counsel, but after the trial judge had ruled preliminarily that the two convictions could be used by the State on cross-examination of the appellant if he took the witness stand. We find no error in the ruling of the trial judge. It was well within the guidelines of State v. Morgan, 541 S.W.2d 385 (Tenn.1976), dealing with the cross-examination of a defendant concerning prior convictions.

Appellant assigns error upon the refusal of the trial judge to grant a continuance

"because of the difficulty in processing the out-of-state subpoenas." Also, during the course of the trial, it appeared that appellant's wife had not arrived to testify as expected, and the refusal of a continuance at that stage of the trial is also assigned as error.

■ We find both issues without merit. There is no showing that any witness desired by appellant was not subpoenaed, even though there may have been some delays in obtaining advance costs from the County. The State's case in chief consumed several days, and there is no showing of any prejudicial delay or other basis for reversing the judgment of the trial court.

■ With respect to appellant's wife, there is neither an affidavit from her nor an offer of proof by counsel as to what her testimony would have been. Under those circumstances we cannot reverse the trial judge for refusing to declare a mistrial or postponing further the trial which was nearing its completion when application for a continuance was made. On the previous day he had permitted an early adjournment and an overnight recess in order that counsel for appellant might arrange for the presence of witnesses who were en route. There was no abuse of discretion in his declining to further recess the trial, particularly when the materiality of the testimony of the witness has not been demonstrated.

It is asserted that the trial court erred in not allowing individual voir dire examination of the jurors and in excusing those jurors who stated their opposition to the death penalty. The voir dire examination of the jurors has not been included in the record on appeal, and we have no way of reviewing these issues. There has been no request for a supplemental transcript, and we cannot predicate a reversal of this conviction on undocumented assertions.

Finally it is urged that the trial judge erred "in not allowing the defense to stipu-

late that the defendant, Timothy Eugene Morris, did indeed forge the checks of Hunter Tait."

■ The State proved the custody of Tait's checks by appellant, the forgeries which he committed and his ultimate destruction of the remaining checks. This was competent evidence which was established by a series of witnesses. There has been no showing of any violation of any rights of the accused in the refusal of the State to enter into a stipulation which would have either curtailed or eliminated this testimony. As previously stated, the evidence of the guilt of appellant in this case was circumstantial only, and the State was entitled to prove all of the relevant circumstances in such manner as it saw fit, within the rules of evidence. Stipulations are a matter of mutual agreement and not a matter of right by one party or the other in an adversary proceeding.

■ We have carefully considered all of the issues presented by counsel for the appellant and have independently reviewed the entire record in this case. We can reach no other conclusion than that stated by the trial judge in his report on this case required pursuant to Rule 12 of the rules of this Court. He stated that in his opinion this was a brutal murder planned in advance for the purpose of robbing the deceased. The record fully supports this conclusion and supports the findings of the jury that there were two aggravating circumstances proved which were not outweighed by any mitigating circumstances. These were that the defendant had previously been convicted of one or more felonies, other than the present charge, involving the use or threat of violence to the person and that the murder was committed while he was engaged in, was attempting to commit or was fleeing after committing a robbery. T.C.A. § 39–2404(i)(2) and (7).[1]

We do not find that the sentence in the present case was disproportionate to that

---

1. Appellant's conviction of homicide in a previous Georgia criminal proceeding was not introduced at the guilt phase of the trial but was proved by the State at the sentencing hearing.

rendered in other cases. The perpetrator of the brutal murder in this case attempted to conceal the body and the evidence of the crime. Appellant was shown to have been with the deceased shortly before his death and admittedly robbed him of his valuable inventory of merchandise, forged checks on his account and undoubtedly stole his vehicle as well. We cannot say that the death penalty is inappropriate or that the jury acted arbitrarily in imposing it.

The sentence is affirmed. The date of execution is fixed at February 1, 1983, unless stayed or otherwise ordered by this Court or other proper authority. Costs are assessed to appellant.

FONES, COOPER and DROWOTA, JJ., concur.

BROCK, J., concurs in the foregoing opinion except as to the imposition of the death penalty. He dissents from the death penalty sentence for the reasons expressed in his dissenting opinion in *State v. Dicks,* 615 S.W.2d 126 (Tenn.1981).