IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2000

## STATE OF TENNESSEE v. DONALD LYNN MILLER

**Direct Appeal from the Criminal Court for Knox County**
**No. 62654B     Ray L. Jenkins, Judge**

---

**No. E1999-00148-CCA-R3-CD**
**January 30, 2001**

---

Donald Lynn Miller was convicted by a jury of felony murder and especially aggravated robbery and received respective sentences of life imprisonment and twenty-three years. On appeal, Miller raises the following issues: (1) whether the trial court committed reversible error by allowing the victim's skull to be admitted into evidence; (2) whether the trial court erred by admitting Miller's statement to police into evidence and (3) whether the evidence is insufficient to support the verdict. After review, we find no error and affirm the judgment of the Knox County Criminal Court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Dail R. Cantrell, Clinton, Tennessee, for the Appellant, Donald Lynn Miller.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Mark A. Fulks, Assistant Attorney General, Randall E. Nichols, District Attorney General, and Robert L. Jolley, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Appellant, Donald Lynn Miller, was charged in a three-count indictment with the offenses of: (1) premeditated first degree murder; (2) murder in the perpetration of a robbery; and (3) especially aggravated robbery. On May 17, 1999, a Knox County jury convicted the Appellant of murder in the perpetration of robbery and especially aggravated robbery, a class A felony. These convictions resulted in sentences of life imprisonment for felony murder and twenty-three years for especially aggravated robbery. On appeal, the Appellant raises the following issues for our review: (1) whether the admission of the victim's skull into evidence constituted reversible error; (2) whether the trial court erred by admitting into evidence the Appellant's statement to police; and (3) whether the evidence produced at trial was sufficient to support the verdict. After review, we find no error. The judgment of the Knox County Criminal Court is affirmed.

## Background

The Appellant, age twenty-eight, and Brian Keith Burton were close friends and were both employed by a construction company in Knoxville. The Appellant and Burton had discussed robbing the victim, James Tipton, for a period of approximately two weeks. The Appellant had known the elderly victim his entire life and routinely spoke with him. As a child, the Appellant lived across the street from the victim and was aware that Tipton carried large sums of money on his person. On October 9, 1995, the Appellant and Burton agreed to meet after work to carry out their plan of robbing the victim. That night, the Appellant drove to Burton's house and the two proceeded to the victim's house. Before reaching the victim's house, however, the Appellant parked his truck in a neighbor's driveway. Burton removed a metal bar from the back of the Appellant's truck and both men approached the victim's house.

The Appellant knocked on the front door.[1] When the victim answered, the Appellant advised Tipton that he had run out of gas and asked if he could borrow some gasoline. Tipton gave the Appellant a five-gallon can of gasoline which he kept in his truck. Burton then came up from behind the victim and struck him three times in the head with the metal bar. The victim died immediately from blunt force trauma to the head. He suffered a blow to the right side of his face, a blow to the top right side of his head, and a blow behind his right ear. Burton then took the victim's billfold, handgun, and over $10,000 in cash.

After the robbery, the Appellant and Burton returned to Burton's house where they divided the money equally. Both the Appellant and Burton proceeded to burn their clothes, shoes, and the victim's wallet in Burton's fireplace. They also disposed of the victim's gun, the metal bar, and the gas can by throwing them into a lake. The victim's body was discovered two days later.

## I. Admission of Victim's Skull Into Evidence

The Appellant first argues that the trial court abused its discretion by allowing into evidence the victim's skull as demonstrative evidence[2] because any probative value that it may have had was clearly outweighed by its prejudicial effect. Specifically, the Appellant asserts that "there was little relevancy, if any, to the facts demonstrated by the medical examiner through the use of the skull, as those facts were not at issue." In essence, the Appellant argues that the admission of the skull was

---

[1] The record is contradictory as to whether the victim was home prior to the Appellant's arrival. In another statement to police, the Appellant said that he and Burton were hiding at the victim's residence when the victim arrived home.

[2] We have characterized admission of the victim's skull as demonstrative evidence based upon the purpose for which it was introduced, *i.e.*, to aid the pathologist in illustrating to the jury factual issues relevant to the homicide prosecution. We acknowledge that, but for this purpose, the victim's skull would typically be considered "real" evidence. In view of the non issues of "authentication" and "proper foundation," we find the distinction between "real" and "demonstrative evidence" in this case is essentially a distinction without a difference. *See generally* NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 901.1, at 613 (3d ed. 1995).

irrelevant because neither "the manner of the victim's death" nor "the nature of the blows" was being contested by the defense.

We begin our review of this issue by first observing that when a defendant pleads not guilty to an offense, the State is entitled to prove every element of that offense, even if as here, the defendant does not contest the relevant factor or offers to stipulate to it. Nonetheless, the Appellant is correct in asserting that the proffered evidence must be relevant and that the trial court must weigh its probative value against its potential prejudicial effect. Tenn. R. Evid. 402 and 403. Notwithstanding, the trial court is not required to exclude evidence simply because it is gruesome in nature where it is relevant to establish a factual issue and its probative value is not substantially outweighed by the danger of unfair prejudice. It is the function of the trial court to determine the admissibility of evidence and its ruling will not be reversed absent an abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

Our supreme court has held on multiple occasions that a cleaned and reconstructed skull is no more prejudicial or gruesome than that of a model or diagram. *See* State v. Pike, 978 S.W.2d 904, 925 (Tenn. 1998); State v. Cazes, 875 S.W.2d 253, 263 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 743 (1995); State v. Morris, 641 S.W.2d 883, 888 (Tenn. 1982). In Morris, 641 S.W.2d at 888, the use of a skull to show the nature and type of injuries sustained by the victim was approved. Similarly, in Cazes, 875 S.W.2d at 263, the introduction of the skull was found to be proper as it aided in identifying the weapon used in the murder.

In this case, the State sought introduction of the victim's skull to aid in understanding the testimony of the forensic pathologist by demonstrating the nature of the injuries inflicted, the amount of force used,[3] and the manner of death. Moreover, demonstrative use of the skull corroborated the Appellant's statement to the police regarding the number of blows inflicted, the manner in which the blows were inflicted and the type of weapon used. In this case, the trial court permitted the cleaned and reconstructed skull to be introduced but not passed to the jury. We find that admission of the skull aided in explaining the testimony of the pathologist and that its probative value was not substantially outweighed by the danger of unfair prejudice. As such, we find no error in its admission.

## II. Sufficiency of the Evidence

The Appellant asserts that the evidence introduced at trial is insufficient to support the guilty verdict. A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of

---

[3] At trial, Dr. Sandra Elkins testified that three separate blows were delivered to the head area. She identified two of the blows which fractured the thickets part of the skull as "blows of magnitude," one of which would have been "immediately fatal." This proof coupled with Burton's possession of a deadly weapon was also relevant to the issue of premeditation, an element of first degree murder, for which the Appellant was standing trial.

-3-

demonstrating that the evidence is insufficient. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally* <u>State v. Adkins</u>, 786 S.W.2d 642, 646 (Tenn. 1990); <u>State v. Burlison</u>, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); <u>Cazes</u>, 875 S.W.2d at 259; Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. <u>State v. Harris</u>, 839 S.W.2d 54, 75, (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993).

On appeal, the Appellant argues that "in order for [the Appellant] to be convicted of especially aggravated robbery, the underlying felony in this matter, he must have had the requisite intent to commit the offense at the time of its commission. However, . . . [the Appellant] testified that he did not know what Burton was going to do, or had done." Thus, the Appellant argues that no rational trier of fact could have found him guilty of especially aggravated robbery. While we acknowledge that the Appellant testified to these facts at trial, the Appellant conveniently ignores the fact that he provided the police with three other pre-trial statements which were admitted into evidence. In his May 1, 1995, statement to Detective Johnson, the Appellant admits to his involvement in the murder and robbery of Tipton. The following is a portion of the transcript of the taped interview which was played for the jury:

| | |
|---|---|
| JOHNSON: | So while you all were working that day you all planned to get together later that night to go rob Mr. Tipton? |
| APPELLANT: | Yeah. |
| . . . | |
| APPELLANT: | He was going to hit him over the head and take his money. |
| . . . | |
| JOHNSON: | O.K. when you parked the truck [near Tipton's residence], you and Brian get out. Did either one of you take anything from the truck? |
| APPELLANT: | Yeah. |
| JOHNSON: | What? |
| APPELLANT: | Took that cheater bar. |
| JOHNSON: | And that's the piece of pipe you had mentioned earlier? |
| APPELLANT: | Yeah. |
| JOHNSON: | Who had that? |
| APPELLANT: | We both had it. |
| . . . | |
| APPELLANT: | . . . We was both up at [Tipton's] house. When [Brian] run around the house well, hell, I just knocked on the door. |

. . .

| | |
|---|---|
| JOHNSON: | What happened next? |
| APPELLANT: | I asked [Jim] to borrow five gallons of gas, he give me the gas and I stood there and kept talkin' to him, kept talkin' to him, and I took the gas and I went down the hill. |
| JOHNSON: | What happened next? |
| APPELLANT: | I heard pow, pow, pow. |
| JOHNSON: | What did you do or what did you hear next? |
| APPELLANT: | Heard Brian say, "Donald." I turned around and I was halfway down the hill. I mean hell I was headed back to the truck. |
| JOHNSON: | When Brian yelled for you what did you do? |
| APPELLANT: | I walked up there. |

. . .

| | |
|---|---|
| JOHNSON: | And what did you see when you got up there? |
| APPELLANT: | I seen him going through Jim's pockets. |

. . .

| | |
|---|---|
| JOHNSON: | Did he take anything out of Jim's pocket? |
| APPELLANT: | He took a big wad of money out of Jim's pocket. He took his billfold out and took his gun. |

. . .

| | |
|---|---|
| JOHNSON: | O.K. Tell me what happened when you got to Brian's house. |

. . .

| | |
|---|---|
| APPELLANT: | He counted the money. |
| JOHNSON: | How much was it? |
| APPELLANT: | Well it was over ten thousand. |

. . .

| | |
|---|---|
| JOHNSON: | So each of you took half of it? |
| APPELLANT: | Yeah, he gave me half. |

Additionally, Burton's ex-wife, Shannon Stewart, testified that the Appellant and Burton came to her house and burned their clothes and shoes. Stewart testified that Burton said they had robbed "the old man" and testified that the Appellant asked her to provide an alibi for them if the police contacted her. She also testified that the Appellant told her several days later that he "chickened out" and that Burton had done everything. Another witness for the State, Stacey Berry, also testified that, prior to the victim's death, she heard the Appellant discuss the amount of money the victim had and say that the victim "didn't need to live." Likewise, Vicki Sharp testified that, shortly after the victim's death, the Appellant had some money that he said "came from a dead man."

To obtain a conviction for felony murder under the indictment in this case, the State was required to prove that the killing of James Tipton was committed in the perpetration or attempt to perpetrate robbery. TENN. CODE ANN. § 39-13-202 (a)(2). To establish the crime of especially aggravated robbery, the State was required to prove: (a) the intentional or knowing theft of property

from the person of another by violence or putting the person in fear; (b) the theft was accomplished with a deadly weapon; and (c) the victim suffered serious bodily injury. TENN. CODE ANN. § 39-13-202(2). The facts are more than sufficient to establish that the Appellant's accomplice murdered the victim by striking him with a metal pipe and removed from the victim's person his personal property. TENN. CODE ANN. § 39-13-403(a)(1)(2) (1997). Although the Appellant neither inflicted the fatal blow nor personally removed the victim's possessions from his person, nonetheless, the proof amply establishes that he aided his accomplice with the intent to promote or assist in the commission of these crimes, and he benefitted in the proceeds. As such, the Appellant was criminally responsible for the conduct of Burton. TENN. CODE ANN. § 39-11-402(2). We find the proof legally sufficient to establish the Appellant's guilt for the offense of felony murder and especially aggravated robbery.

### III  Motion to Suppress Statement to Police

In his final issue, the Appellant argues that the trial court erred by denying his motion to suppress the statement made to police on May 1, 1996, wherein he admitted to participating in the planned robbery of the victim. Specifically, the Appellant asserts that the "statement he gave to law enforcement officers on or about May 1, 1996, was not accurate and was the product of coercion and threats made against his family."

The primary consideration in determining the admissibility of the evidence is whether the confession is an act of free will. State v. Chandler, 547 S.W.2d 918, 920 (Tenn. 1977). A confession is not voluntary when "the behavior of the state's law enforcement officials was such as to overbear" the will of an accused and "bring about confessions not freely self-determined." State v. Kelly, 603 S.W.2d 726, 728 (Tenn. 1980). In State v. Guy Binette, No. E1998-00236-SCR-11 (Tenn. at Knoxville, Oct. 5, 2000) (*for publication*), our supreme court adopted the following standard for review of a trial court's findings of fact and conclusions of law on suppression issues:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of the conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

However, the supreme court also carved out an exception to the standard noted above and held that "when a trial court's findings of fact at a suppression hearing are based on evidence that does not involve issues of credibility, a reviewing court must examine the record *de novo* without a presumption of correctness." Id. In the present case, the sole issue involved is one of credibility. Because, the *de novo* standard of review is not implicated, we review this issue with a presumption of correctness.

The Appellant argues that his sole reason for falsely confessing was based on Captain Johnson's threats that the Appellant's wife and father would be arrested if the Appellant did not confess and that his children would then be placed with the Department of Human Services. The record reflects that the Appellant was twenty-eight-years-old and a high school graduate. On May 1, 1996, he was transported from his residence to the interview room of the Knox County Sheriff's Department. At the Sheriff's Department, the Appellant was advised of his *Miranda* rights which he acknowledged by signing the "waiver of rights form." The Appellant was familiar with the interview process as this was his third or fourth interview with investigators. On this occasion, the Appellant provided to Captain Johnson a lengthy statement explaining his involvement in the planning and robbery of James Tipton. This statement, which was audio-taped and played to the jury at trial, contained thirty-seven pages of transcribed testimony. At the suppression hearing, the Appellant testified:

> The man [Captain Johnson] come in there and told me that he had my wife and he was going to arrest her, he was going to take my kids away. He had my father come downtown - down to the Police Department. He was going to put him under arrest for accessory. And told me to tell him what he wanted to hear.

At the hearing, however, Captain Johnson denied ever advising either the Appellant or the Appellant's wife that she would be arrested or that the children would be removed if the Appellant did not confess. After hearing the motion to suppress, the trial court denied the Appellant's request and admitted the May 1, 1996, statement into evidence.

Nothing in the record preponderates against the trial court's determination that the Appellant's statements were voluntary and not the result of coercion, threats, or lack of knowledge of his constitutional rights. As such, the trial court properly admitted the Appellant's statement into evidence. This issue is without merit.

## CONCLUSION

We find that the trial court did not err in admitting the victim's skull as demonstrative evidence or err in admitting into evidence the Appellant's statement to the police. Moreover, we find the evidence produced at trial sufficient to support the verdicts. Accordingly, the judgment of the Knox County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE